

# NUMBER 13-14-00696-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

| | |
|---|---|
| COLUMBIA VALLEY HEALTHCARE SYSTEM L.P. D/B/A VALLEY REGIONAL MEDICAL CENTER, | Appellant, |

**v.**

| | |
|---|---|
| MARIA ZAMARRIPA, AS GUARDIAN OF THE ESTATES OF REY FRANCISCO RAMIREZ, AND RAMMY JUSTIN RAMIREZ, MINORS, | Appellee. |

### On appeal from the 445th District Court
### of Cameron County, Texas.

## MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Benavides and Perkes
Opinion by Justice Perkes**

Appellant Columbia Valley Healthcare System, L.P. ("Valley Regional") appeals

the trial court's denial of its motion to dismiss appellee Maria Zamarripa's health care

liability claim.  *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(b) (West, Westlaw through Ch. 46 2015 R.S.).   By three issues, Valley Regional argues the trial court erred in denying its motion to dismiss because:   (1) Zamarripa's expert is unqualified to offer an opinion regarding whether Valley Regional breached an applicable standard of care; (2) Zamarripa's expert reports are deficient regarding the standard of care, breach, and causation; and (3) Zamarripa's expert report is inconsistent and speculative.   We affirm.

## I.    PARTIES

Reynaldo Ramirez, father of the minor children Rey Ramirez and Rammy Ramirez, filed his original petition against Valley Regional and other defendants following the death of his wife, Yolanda Flores.[1]   Zamarripa subsequently filed her petition in intervention. According to Zamarripa, she was appointed guardian of the person and estate of the minor children and continues to pursue the minor children's claims in place of Reynaldo Ramirez.[2]   Zamarripa's relationship with the minor children is reflected by the trial court's order changing the style and caption of this case.

## II.    BACKGROUND

Zamarripa alleges the following facts in support of her petition in intervention:

Yolanda Flores was thirty-six years old and pregnant with her third child when she arrived at Valley Regional for assessment of her pregnancy on March 6, 2012.   She complained of back pain and suprapubic pressure and received an obstetrical ultrasound.

---

[1] Ramirez brought his lawsuit against Valley Regional individually and as personal representative of the estate of Yolanda Flores, and as representative of all wrongful death beneficiaries, and as next friend of Rey Ramirez, and Rammy Ramirez.

[2] Ramirez nonsuited all of his claims against all defendants.

2

The ultrasound report states, "[t]he placenta appears to cover the internal os and is suggestive of a complete placental previa." The radiologist's report states, "findings are suspicious for complete placental previa, follow up is recommended" and notes that the radiologist discussed the findings with Dr. Ellis on March 6, 2012.

On May 15, 2012, when she was approximately thirty-two weeks pregnant, Flores began vomiting. As a result, she was taken via ambulance by Brownsville EMS to Valley Regional. She was assessed and treated at Valley Regional by Dr. Ellis and Dr. Gonsoulin. Hidalgo County EMS transported Flores from Valley Regional in Brownsville to Bay Area Hospital in Corpus Christi by ground ambulance. Flores's transfer from Valley Regional to Bay Area Hospital was not an emergency transfer, and she did not arrive at Bay Area Hospital until approximately 4:24 p.m. Flores suffered a placental abruption prior to her arrival at Bay Area Hospital. She was bleeding and underwent a cesarean section and hysterectomy but was pronounced dead at Bay Area Hospital at 11:02 p.m.

In her petition, Zamarripa alleges that Valley Regional was negligent because its nurses allowed Flores to be discharged on May 15, 2012, when she was not suitable for discharge; and Valley Regional personnel allowed a ground ambulance to transfer Flores to Corpus Christi when Flores should not have been transferred.

In support of the health care liability claim against Valley Regional, the plaintiffs timely filed two expert reports—one authored by Federick Harlass, M.D. and another authored by Grace Spears, R.N. Dr. Harlass practices maternal-fetal medicine while

3

Spears is the pediatric case manager for hematology and oncology. The plaintiffs timely provided Dr. Harlass's supplemental report.

Valley Regional objected to the reports, arguing that Dr. Harlass's and Spears's reports failed to set forth the standard of care, breach of standard of care, or causation with respect to Valley Regional. Valley Regional also argued that as a nurse, Spears was unqualified to provide an opinion regarding causation. Valley Regional filed a motion to dismiss the health care liability claim, arguing that "the report[s] [do] not represent an objective good faith effort to comply with the definition of an expert report." Citing Texas Civil Practice and Remedies Code section 74.351(a), the trial court denied Valley Regional's objections and motion to dismiss. This accelerated, interlocutory appeal followed. *See id.* §§ 51.049(a)(9), 74.351(a).

### III. STANDARD OF REVIEW

We review a trial court's decision with respect to expert reports and the qualifications of experts for an abuse of discretion. *Larson v. Downing*, 197 S.W.3d 303, 304–05 (Tex. 2006); *Jernigan v. Langley*, 195 S.W.3d 91, 93 (Tex. 2006); *Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios*, 46 S.W.3d 873, 876 (Tex. 2001). The trial court abuses its discretion if it acts unreasonably or arbitrarily or without reference to any guiding rules or principles. *Walker v. Gutierrez*, 111 S.W.3d 56, 62 (Tex. 2003).

### IV. APPLICABLE LAW

Under Chapter 74, an expert report is defined as:

a written report by an expert that provides a fair summary of the expert's opinions as of the date of the report regarding applicable standards of care, the manner in which the care rendered by the physician or health care

4

provider failed to meet the standards, and the causal relationship between that failure and the injury, harm, or damages claimed.

TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(r)(6).

When a document purporting to be an expert report is timely served and is properly challenged, the trial court "shall grant [the] motion challenging the adequacy of [the] report only if it appears to the court, after hearing, that the report does not represent an objective good faith effort to comply with the definition of an expert report in subsection (r)(6)." *Id.* § 74.351(l); *see Loaisiga v. Cerda*, 379 S.W.3d 248, 260 (Tex. 2012). To qualify as an objective good faith effort, the report must (1) inform the defendant of the specific conduct the plaintiff complains of, and (2) provide a basis for the trial court to conclude that the plaintiff's claims have merit. *Scoresby v. Santillan*, 346 S.W.3d 546, 556 (Tex. 2011) (citing *Palacios*, 46 S.W.3d at 879). The report and/or its accompanying curriculum vitae (CV) must also establish that the report's author is qualified to opine as an expert on the subject matter of the report. *Leland v. Brandal*, 217 S.W.3d 60, 62 (Tex. App.—San Antonio 2006), *aff'd on other grounds*, 257 S.W.3d 204 (Tex. 2008). Those qualifications must appear within the four corners of the expert report and cannot be inferred. *Id.*; *see also Palacios*, 46 S.W.3d at 878; *Baylor Coll. of Med. v. Pokluda*, 283 S.W.3d 110, 117 (Tex. App.—Houston [14th Dist.] 2009, no pet.). To meet the "good faith effort" requirement, "[n]o particular words or formality are required, but bare conclusions will not suffice. The report must address all the elements, and omissions may not be supplied by inference." *Scoresby*, 346 S.W.3d at 556 (citations omitted). "The purpose of the expert report requirement is to deter frivolous claims, not to dispose of claims regardless of their merits." *Id.* at 554 (citation omitted).

5

A report meets the minimum qualifications for an expert report under the statute "if it contains the opinion of an individual with expertise that the claim has merit, and if the defendant's conduct is implicated." *Id.* at 557. If a report meets these qualifications but is deficient, the claimant is entitled to one thirty-day extension to cure the deficiencies. TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(c). "All deficiencies, whether in the expert's opinions or qualifications, are subject to being cured before an appeal may be taken from the trial court's refusal to dismiss the case." *Scoresby*, 346 S.W.3d at 557; *see also Leland*, 257 S.W.3d at 207–08 (holding that when elements of a timely filed expert report are found deficient, either by the trial court or on appeal, one thirty-day extension to cure the report may be granted).

## V.  EXPERT QUALIFICATIONS

By its first issue, Valley Regional argues that Spears is unqualified to provide an opinion regarding the standard of care of Valley Regional's nurses in the labor and delivery department. Specifically, Valley Regional asserts that Spears is not practicing health care in a field of practice that involves the same type of care or treatment as that delivered by Valley Regional.

### A.  Applicable Law

An expert must satisfy section 74.402 to be qualified to provide opinion testimony regarding whether a health care provider departed from the accepted standard of care. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(r)(5)(B). Section 74.402 lists three specific qualifications an expert witness must possess in order to provide opinion

6

testimony on how a health care provider departed from accepted standards of health care—the expert must:

1. [be] practicing health care in a field of practice that involves the same type of care or treatment as that delivered by the defendant health care provider, if the defendant health care provider is an individual, at the time the testimony is given or was practicing that type of health care at the time the claim arose;[3]

2. [have] knowledge of accepted standards of care for health care providers for the diagnosis, care, or treatment of the illness, injury, or condition involved in the claim; and

3. [be] qualified on the basis of training or experience to offer an expert opinion regarding those accepted standards of health care.

*Id.* § 74.402(b) (West, Westlaw through Ch. 46 2015 R.S.).

In determining whether a witness is qualified on the basis of training or experience, section 74.402 also requires the court to consider whether the witness:

1. is certified by a licensing agency of one or more states of the United States or a national professional certifying agency, or has other substantial training or experience, in the area of health care relevant to the claim; and

2. is actively practicing health care in rendering health care services relevant to the claim.

*Id.* § 74.402(c).   A plaintiff offering expert medical testimony must establish that the report's author has expertise regarding "the specific issue before the court which would qualify the expert to give an opinion on that particular subject." *Broders v. Heise*, 924 S.W.2d 148, 153 (Tex. 1996).   Our analysis of the proffered expert's qualifications focuses on "the very matter" on which the expert is to give an opinion.   *Id.*

---

[3] The parties dispute whether this subsection applies.   By its express terms, section 74.402(b)(1) does not apply in this case, since Valley Regional is not an individual.   *See Renaissance Healthcare Sys., Inc.,* 343 S.W.3d 571, 588 (Tex. App.—Beaumont 2011, no pet.).

**B. Discussion**

Spears's CV shows that she has practiced nursing in Texas for twelve years and is board certified in ambulatory care nursing. While her current position is as a pediatric nurse case manager in a hematology and oncology unit, her previous experience includes labor and delivery and emergency room nursing. In her report, Spears states that "I am well familiar with EMS transport standards of care as well as [labor and delivery] nursing standards of care."

Valley Regional argues that Spears is currently practicing in a hematology and oncology unit, and not in a labor and delivery unit. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.402(c)(2). Valley Regional also argues that when she did practice in labor and delivery nine years earlier, she was an LVN and not an RN. Valley Regional concludes that because Spears is not currently practicing in a field that involves the same type of care or treatment as that delivered by Valley Regional, and was never an RN in labor and delivery, she cannot describe the standard of care for nurses in labor and delivery.

In support of its first argument, Valley Regional relies on *Christus Spohn Health Sys. Corp. v. Castro*, No. 13–13–00302–CV, 2013 WL 6576041, at *4 (Tex. App.—Corpus Christi Dec. 12, 2013, no pet.) (mem. op.). In *Castro*, the plaintiff's petition included facts showing that the circumstances under which he received treatment—that allegedly negligently caused a pressure ulcer—involved trauma and intensive care unit (ICU) treatment of severe injuries following an accident. *Id.* In this regard, his expert needed to be qualified to render an opinion on the applicable standard of care in those circumstances; i.e., the prevention and/or treatment of pressure ulcers in the context of

8

ICU/trauma care. *Id.* While the experts in *Castro* were familiar with pressure ulcers, they did not explain their experience in preventing and treating pressure ulcers in the context of ICU/trauma patients, or how their fields of practice involved the same type of ICU/trauma care that defendant Spohn provided. *Id.* In that context, we held that the experts were unqualified because their field of practice did not involve the same type of care that Spohn provided to Castro. *Id.* In reaching this holding, we noted that although an expert need not be a practitioner in the same specialty as the defendant to qualify as an expert, the expert is only competent if the expert has practical knowledge of what is usually and customarily done by a practitioner under circumstances similar to those confronting the defendant. *See id.* (citing *Ehrlich v. Miles*, 144 S.W.3d 620, 625 (Tex. App.—Fort Worth 2004, no pet.)).

Since the facts in *Castro* are distinguishable, Valley Regional's reliance on *Castro* is misplaced. Spears, through her previous experience working in labor and delivery, has practical knowledge of the procedures and standards of care in labor and delivery. In addition, her work experience specifically included emergency care. Unlike the reports in *Castro*, her report specifically states: "[i]n my nursing experience in the labor and delivery setting, I provided nursing assessment and care to laboring mother and fetus. From my experience, I have knowledge of appropriate indications for transfer of patients and the risks of transfer of a pregnant patient in pre-term labor with placenta accreta."

Chapter 74 does not require that the expert be a specialist in the exact same field as the defendant health care provider, and, therefore, we disagree that Spears is

9

unqualified due to her current position in pediatric hematology and oncology. *See Roberts v. Williamson*, 111 S.W.3d 113, 121 (Tex. 2003) (holding pediatrician qualified to testify on neurological injuries given pediatrician's study on effects of pediatric neurological injuries and advising parents about effects of those injuries); *San Jacinto Methodist Hosp. v. Bennett*, 256 S.W.3d 806, 813 (Tex. App.—Houston [14th Dist.] 2008, no pet.) (concluding doctor was qualified when report specifically stated: "I am familiar with the standard of care for both nurses and physicians for the prevention and treatment of decubitus ulcers."); *see also Health Care Unlimited v. Villareal*, No. 13–09–00456–CV, 2010 WL 468061, *4 (Tex. App.—Corpus Christi, Feb. 11, 2010, no pet.) (holding doctor was qualified based on past use of similar surgical techniques and past training on specific treatment similar to techniques and treatments in plaintiff's case).

We are further unpersuaded by Valley Regional's claim that because Spears was a licensed vocational nurse (LVN) during her period of employment in labor and delivery, she is unqualified to testify regarding the standard of care for registered nurses (RN). Valley Regional cites to no authority, and we have located none, that supports the proposition that an LVN is unfamiliar with the standard of care for RNs. Moreover, at the time she prepared her report, Spears was a board-certified RN.

We are mindful that expert qualifications should not be too narrowly drawn. The trial court should determine whether the proffered expert has the knowledge, skill, experience, training, or education regarding the specific issue before the court which would qualify the expert to give an opinion on that particular subject. *Larson v. Downing*, 197 S.W.3d 303, 305 (Tex. 2006) (per curiam); *Broders,* 924 S.W.2d at 152; *see Baylor*

10

*Med. Ctr. at Waxahachie v. Wallace*, 278 S.W.3d 552, 558 (Tex. App.—Dallas 2009, no pet.) (physician who stated he was familiar with standard of care for nurses and for prevention and treatment of injury involved in claim, was qualified to opine about standard of care for nurses); *see also IHS Acquisition No. 140 Inc. v. Travis*, No. 13–07–00481–CV, 2008 WL 1822780, at *5 (Tex. App.—Corpus Christi 2008, pet. denied) (mem. op.) (doctor specializing in geriatrics qualified to opine about standard of care applicable to nursing home).

The trial court did not abuse its discretion in concluding that Spears was qualified to provide an opinion regarding the standard of care of Valley Regional's nurses in the labor and delivery department. *See Broders,* 924 S.W.2d at 153. We overrule Valley Regional's first issue.

## VI.    SUFFICIENCY OF REPORTS

By its second issue, Valley Regional asserts that the expert reports are deficient on the elements of the standard of care, breach of the standard of care, and causation. Specifically, Valley Regional argues that there is no adequate statement on causation since no link exists between the standard of care and breach as stated in Spears's report and the causation as stated in Dr. Harlass's reports. According to Valley Regional, Dr. Harlass's initial report places responsibility on the physicians for ordering and accepting Flores's transfer, but his supplemental report claims that Flores's death was partially "due to the breaches of care by the [Valley Regional] personnel in permitting and facilitating the transfer." Valley Regional concludes that since Spears's report offers only an inadequate and conclusory explanation of the standard of care with respect to "permitting

11

and facilitating the transfer", Dr. Harlass's report is inadequate for failing to connect the alleged breach with causation.

In response, Zamarripa argues that an expert report is not required to address "proximate cause", and, further, that Spears's report explained the standard of care in terms of "advocating against transfer" rather than "permitting and facilitating the transfer." Zamarripa asserts that the above terminology is essentially the same in that both phrases describe the same action.   We agree with Zamarripa.

## A. Applicable Law

A claimant must present specific evidence in a medical report because "knowing what specific conduct the plaintiff's experts have called into question is critical to both the defendant's ability to prepare for trial and the trial court's ability to evaluate the viability of the plaintiff's claims."   *Russ v. Titus Hosp. Dist.*, 128 S.W.3d 332, 340 (Tex. App.— Texarkana 2004, pet. denied) (citing *Palacios*, 46 S.W.3d at 877).   The Texas Supreme Court stated that "[w]hether a defendant breached his or her duty to a patient cannot be determined absent specific information about what the defendant should have done differently."   *Id.*   In other words, one must be able to determine from the report what the standard of care required.   This requires "specific information about what the defendant should have done differently."   *Id.*   The report, however, does not need magical words. *Bowie Mem'l Hosp. v. Wright*, 79 S.W.3d 48, 53 (Tex. 2002); *Moore v. Sutherland*, 107 S.W.3d 786, 790 (Tex. App.—Texarkana 2003, pet. denied).   It is the substance of the opinions, not the technical words used, that constitutes compliance with the statute. *Sutherland*, 107 S.W.3d at 790; *see Renaissance Surgical Centers-South Tex., L.L.P. v.*

12

*Jimenez*, No. 13–07–121–CV, 2008 WL 3971096, at *10 (Tex. App.—Corpus Christi, Aug. 28, 2008, no pet.).

**B. Discussion**

Regarding Valley Regional's nurses standard of care and alleged breach, Spears's report states:

> Nursing standard of care requires the Labor and Delivery nurses to assess and address an OB patient's complete status for suspected bleeding and infection and PTL (pre-term labor) and to advocate for the patient by reporting abnormal vital signs, fetal monitor strip (FMS) status and labs to the physician and requesting orders for new medications, and to advocate against transfer of the patient if warranted.

> .   .   .   .

> The nurses at Valley Regional Medical Center breached standard of care on 05/15/12 by allowing the patient to be transferred to another facility many miles away while she [was] clearly in PTL on 05/15/12. Valley Regional L&D nurses documented Mrs. Flores's continued CTX (contractions) on the FMS to 1250 (VRMC record no. 172) and she was also diaphoretic (sweating) on assessment by EMS at VRMC. She had CTX when transferred to EMS personnel at 1235. The FMS from the EMS transfer (part of BAH records) show Mrs. Flores continuing with contractions. The VRMC nurses should have advocated for her to remain at VRMC rather than permitting and facilitating her transfer across Texas to BAH (Bay Area Hospital) by ground ambulance.

The substance of Spears's report gave fair notice to Valley Regional of: (1) the standard of care—what most labor and delivery nurses would do; and (2) what the nurses did wrong—failed to advocate against a transfer. The expert report need not present evidence as if it were litigating the merits of the case. *Sutherland*, 107 S.W.3d at 790. It may be informal, and the information presented does not need to meet the same requirements as evidence offered in a summary judgment proceeding or in a trial. *Palacios*, 46 S.W.3d at 879.

13

Without explanation, Valley Regional contends that Spears's report discussing the standard of care is conclusory and inadequate. We disagree. Spears's report goes beyond merely stating the standard of care and concluding that Valley Regional breached that standard. She specifically explains how the breach occurred and what should have been done instead. Rather than being conclusory, Spears's report is an opinion containing specific facts. *See Sutherland*, 107 S.W.3d at 791. Given that Dr. Harlass's report identifies the Valley Regional nurses' involvement in Flores's transfer as a cause of the injury—Flores was in the back of an ambulance in route to the hospital when she began bleeding from the placental abruption—the combined reports sufficiently link the breach of the standard of care to causation. *See Salais v. Tex. Dep't of Aging & Disability Servs.*, 323 S.W.3d 527, 536 (Tex. App.—Waco 2010, no pet.).

The trial court reasonably concluded that the expert reports adequately explained the standard of care, breach of the standard of care, and causation. The trial court did not abuse its discretion. We overrule Valley Regional's second issue.

## VII. CONSISTENCY OF REPORT

By its third issue, Valley Regional alleges that Dr. Harlass's report is internally inconsistent and speculative. Specifically, Valley Regional argues that: (1) in Dr. Harlass's initial report, he identified physician action as causing Flores's death, but in his supplemental report, he stated that Valley Regional nurses caused the death; and (2) Valley Regional's nurses had no authority to permit or refuse Flores's transfer.

Dr. Harlass's first report expressed his opinion that the physician's actions caused Flores's death. After receiving and reviewing Spears's report, Dr. Harlass provided a

14

supplemental report which included his opinion that Valley Regional's nurses were also a cause of Flores's death. According to Valley Regional, the inconsistency in Dr. Harless's report is due to his false assumption that the nurses at Valley Regional had the authority to permit or refuse a transfer.

First, as we explained above, the reports summarize the standards of care the Valley Regional nurses were required to follow, how the nurses breached those standards, and the causal relationship between the nurses failures and the injuries sustained. We disagree with Valley Regional that the two types of causation are mutually exclusive. Rather, the causal connection is the same—that because the physicians and nurses breached the standard of care regarding patient transfers, Flores was in an ambulance where she was unable to receive the proper medical intervention during an emergency. *See Certified EMS, Inc. v. Potts*, 392 S.W.3d 625, 630 (Tex. 2013) ("If a health care liability claim contains at least one viable liability theory, as evidenced by an expert report meeting the statutory requirements, the claim cannot be frivolous . . . In sum, an expert report that adequately addresses at least one pleaded liability theory satisfies the statutory requirements, and the trial court must not dismiss in such a case."). Although evidence may later prove that Dr. Harless's opinion is incorrect, that is not a reason to conclude at this stage of the proceedings that his report is inadequate and that appellant's claims should be dismissed. *See Fagadau v. Wenkstern*, 311 S.W.3d 132, 139 (Tex. App.—Dallas 2010, no pet.) ("The possibility that facts may later be discovered that prove Dr. Goldman's opinions on causation are incorrect is not a basis for holding the report insufficient under section 74.351."); *Methodist Hosp. v. Shepherd–Sherman*,

15

296 S.W.3d 193, 200 (Tex. App.—Houston [14th Dist.] 2009, no pet.) (noting that although discovery could later prove that a doctor's opinion is wrong, that is not a basis for holding report insufficient under chapter 74).

Second, with respect to whether Dr. Harless's report is speculative, we acknowledge that nothing in Dr. Harless's or Spears's reports state whether the Valley Regional nurses did or did not have the authority to permit or refuse a transfer. In order for the trial court to reach that conclusion, it would have to look beyond the four corners of the expert reports. *See Palacios*, 46 S.W.3d at 878 (explaining that the trial court should look no further than the report itself, because all the information relevant to the inquiry is contained within the document's four corners). As previously discussed, Dr. Harless' statement on causation is not one of mere possibility, but is a statement of fact: "due to the breaches of care by [Valley Regional] personnel . . . . Flores was in a location (ambulance on the highway) when and where timely emergent c-section and hysterectomy surgery was not available . . . ."

We conclude that the trial court did not abuse its discretion in concluding that Dr. Harlass's report was not internally inconsistent and speculative. We overrule Valley Regional's third issue.

## VIII. SUMMARY

Zamarripa provided expert reports that properly informed Valley Regional of the specific conduct complained of and that provide a basis for the trial court to conclude that Zamarripa's claims have merit. *See Scoresby,* 346 S.W.3d at 556. Therefore, the reports represent a good-faith effort to comply with the definition of an expert report. *See*

16

TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(r)(6). We conclude the trial court did not abuse its discretion in denying Valley Regional's motion to dismiss. *See Scoresby*, 346 S.W.3d at 556.

## IX.   CONCLUSION

We affirm the order of the trial court.

GREGORY T. PERKES
Justice

Delivered and filed the
31st day of August, 2015.