# IN THE SUPREME COURT OF TEXAS

════════════
No. 15-0909
════════════

COLUMBIA VALLEY HEALTHCARE SYSTEM, L.P. D/B/A
VALLEY REGIONAL MEDICAL CENTER, PETITIONER,

v.

MARIA ZAMARRIPA, AS GUARDIAN OF THE ESTATES OF
R.F.R. AND R.J.R., MINORS, RESPONDENT

════════════════════════════════════════════════════
ON PETITION FOR REVIEW FROM THE
COURT OF APPEALS FOR THE THIRTEENTH DISTRICT OF TEXAS
════════════════════════════════════════════════════

**Argued March 21, 2017**

CHIEF JUSTICE HECHT delivered the opinion of the Court.

This is a health care liability claim for the tragic death of Yolanda Iris Flores. The Texas Medical Liability Act ("the Act")[1] imposes a threshold requirement that the plaintiff furnish what we have described as "a statement of opinion by an individual with expertise indicating that the claim asserted . . . has merit."[2] This expert report must address, in part, "the causal relationship"

---

[1] TEX. CIV. PRAC. & REM. CODE §§ 74.001–.507.

[2] *Scoresby v. Santillan*, 346 S.W.3d 546, 549 (Tex. 2011); *see* TEX. CIV. PRAC. & REM. CODE § 74.351.

between a health care provider's failure to meet applicable standards of care and the claimed injury.[3] The plaintiff here argues, and the court of appeals agreed, that "an expert report is not required to address 'proximate cause'".[4] We disagree and conclude that the plaintiff's expert reports do not show how the defendants before us caused Flores's death. Accordingly, we reverse the court of appeals' judgment and remand the case to the trial court for further proceedings.

## I[5]

Flores, 36, pregnant with her third child and midway through the third trimester, was taken by ambulance to the Valley Regional Medical Center ("Valley Regional")[6] labor and delivery emergency room in Brownsville, Texas, early on a Tuesday morning. She had been vomiting and was experiencing fever, abdominal pain, and mild contractions. Dr. Patrick Ellis saw her and ordered a pain reliever, intravenous antibiotics, a sonogram, and an MRI, as well as a biophysical profile to test the health of her baby. The sonogram was normal and the baby appeared to be healthy, but Flores's contractions continued, and the MRI showed placenta accreta, an abnormal placental attachment to the uterine wall. Placenta accreta is a serious condition that increases the risk of heavy

---

[3] TEX. CIV. PRAC. & REM. CODE § 74.351(r)(6) ("'Expert report' means a written report by an expert that provides a fair summary of the expert's opinions as of the date of the report regarding applicable standards of care, the manner in which the care rendered by the physician or health care provider failed to meet the standards, and the causal relationship between that failure and the injury, harm, or damages claimed.").

[4] ___ S.W.3d ___, ___ (Tex. App.—Corpus Christi-Edinburg 2015) (mem. op.).

[5] This factual background is taken from the plaintiff's pleadings and expert reports.

[6] Valley Regional is owned by petitioner Columbia Valley Healthcare System, L.P., and is an HCA Healthcare affiliate. We use "Valley Regional" both to refer to the hospital and to identify petitioner.

2

bleeding during delivery.[7] The MRI did not show a placental abruption—a detachment of the placenta from the uterus which can deprive the baby of oxygen and nutrients and cause heavy bleeding in the mother.[8]

---

[7] An ultrasound several weeks earlier, when Flores had gone to the emergency room following an automobile accident, showed a complete placenta previa. According to the Mayo Clinic website:

> The placenta is a structure that develops inside your uterus during pregnancy, providing oxygen and nutrition to and removing wastes from your baby. The placenta connects to your baby through the umbilical cord. In most pregnancies, the placenta attaches at the top or side of the uterus. Placenta previa . . . occurs when a baby's placenta partially or totally covers the mother's cervix—the outlet for the uterus. Placenta previa can cause severe bleeding during pregnancy and delivery.

*Placenta previa, Overview,* MAYO CLINIC (May 17, 2017), http://www.mayoclinic.org/diseases-conditions/placenta-previa/home/ovc-20319623 (last visited June 2, 2017, copy in case file).

> Placenta accreta is a serious pregnancy condition that occurs when blood vessels and other parts of the placenta grow too deeply into the uterine wall. Typically, the placenta detaches from the uterine wall after childbirth. With placenta accreta, part or all of the placenta remains firmly attached. This can cause severe blood loss after delivery. . . . Placenta accreta is considered a high-risk pregnancy complication. If placenta accreta is suspected during pregnancy, you'll likely need an early C-section delivery followed by the surgical removal of your uterus (hysterectomy).

*Placenta Accreta, Definition*, MAYO CLINIC (Mar. 28, 2015), http://www.mayoclinic.org/diseases-conditions/placenta-accreta/basics/definition/con-20035437 (last visited June 2, 2017, copy in case file). Risk factors include prior cesarean sections, a placenta partially or totally covering the cervix (placenta previa), maternal age, and prior childbirth. *Placenta Accreta, Risk Factors*, MAYO CLINIC (Mar. 28, 2015), http://www.mayoclinic.org/diseases-conditions/placenta-accreta/basics/risk-factors/con-20035437 (last visited June 2, 2017, copy in case file).

[8] Again, according to the Mayo Clinic website:

> Placental abruption (abruptio placentae) is an uncommon yet serious complication of pregnancy. The placenta is a structure that develops in the uterus during pregnancy to nourish the growing baby. If the placenta peels away from the inner wall of the uterus before delivery—either partially or completely—it's known as placental abruption. Placental abruption can deprive the baby of oxygen and nutrients and cause heavy bleeding in the mother. Placental abruption often happens suddenly. Left untreated, placental abruption puts both mother and baby in jeopardy.

*Placental Abruption, Definition*, MAYO CLINIC (Dec. 13, 2014), http://www.mayoclinic.org/diseases-conditions/placental-abruption/basics/definition/con-20024292 (last visited June 2, 2017, copy in case file).

3

Midmorning, Dr. Ellis ordered Flores transferred to the Corpus Christi Medical Center - Bay Area ("Bay Area") 159 miles away.[9] The reason, according to medical records, was a "medical necessity upgrade in care," though there was no emergency. Dr. Whitney Gonsoulin, a Bay Area physician, agreed to accept the transfer. A Hidalgo County Emergency Medical Service ("EMS") ambulance left Valley Regional with Flores at 1:22 p.m. Flores was diaphoretic and felt "pressure" pain in her abdomen. Midway through the trip, she began to bleed and became anxious and restless, and when EMS would not stop for ice or to open the vehicle doors, she became extremely combative. An EMS medic called Bay Area for permission to divert to another facility so that Flores could be evaluated but was instructed to continue on. When the ambulance became stuck in a severe traffic jam, Flores began screaming to get to the hospital, then collapsed onto her side in cardiac arrest. She was pulseless and apneic, and the medics began cardiopulmonary resuscitation. Shortly after 4:00 p.m., the ambulance arrived at Bay Area. An emergency cesarian section and hysterectomy were immediately performed, and Flores was stable at first. But tragically, she died at 11:02 p.m. Her baby girl was stillborn.

Maria Zamarripa, guardian of Flores's two minor children, sued Ellis, Gonsoulin, Valley Regional, Bay Area, EMS, and others.[10] Against Valley Regional, Zamarripa alleges that its "[n]urses allowed [Flores] to be discharged . . . when she was not suitable for discharge", and that "[p]ersonnel . . . allowed a ground ambulance transfer . . . when [Flores] should not have been transferred", as

---

[9] Bay Area is owned by the Bay Area Healthcare Group, Ltd., and is also an affiliate of HCA Healthcare.

[10] Reynaldo Ramirez initially filed suit on behalf of Flores and her minor children and Zamarripa later intervened. We use "Zamarripa" to refer to legal actions taken by both Zamarripa herself and Ramirez in the trial court.

well as "[o]ther acts/omissions of negligence" unspecified. To satisfy the Act's expert-report requirement, Zamarripa timely served on Valley Regional two reports, one by Grace Spears, a nurse with experience in the labor and delivery setting as well as the emergency room, and the other by Dr. Frederick Harlass, an obstetrician/gynecologist.

An expert report required by the Act must address the applicable standards of care, the failure of a health care provider to meet them, and the causal relationship between that failure and the injury, harm, or damages claimed.[11] We focus here on Valley Regional's argument that the expert reports do not adequately show causation. Spears's report stated that Valley Regional nurses breached the standard of care:

- "by not advocating for":

  - "additional treatment of [preterm labor] when [Flores's] contractions . . . continued . . .";

  - "further investigation and treatment of [Flores's] low fibrinogen levels";

  - "further investigation of [Flores's] continued abdominal pain/pressure with diagnosis of placenta accreta";

  - "[Flores] to remain at [Valley Regional] rather than permitting and facilitating her transfer across Texas to [Bay Area] by ground ambulance"; and

- "by allowing [Flores] to be transferred to another facility many miles away while she [was] clearly in [preterm labor] . . .".

---

[11] TEX. CIV. PRAC. & REM. CODE §§ 74.351(a) (requiring expert report) and (r)(6) (defining expert report).

5

Spears's report did not, of course, address how these breaches caused Flores's death because under the Act, only physicians can be experts on causation.[12] Harlass's report stated that

> due [to] the breaches of care by the [Valley Regional] personnel in permitting and facilitating the transfer, . . . Flores was in a location (ambulance on the highway) when and where timely emergent c-section and hysterectomy surgery was not available when she began to bleed from the abrupted placenta. Her bleeding caused her cardiovascular arrest due to lack of oxygen carried to the heart for sufficient pumping. This collapse led to DIC[13] and her death.

Valley Regional objected to the reports and moved to dismiss, in part, on the ground that they were insufficient to show how Valley Regional caused Flores's death when it was Dr. Ellis, not the hospital, who ordered Flores transferred. The trial court overruled Valley Regional's objection and denied its motion to dismiss. Valley Regional appealed the interlocutory order, and the court of appeals affirmed.[14]

We granted Valley Regional's petition for review.[15]

---

[12] *Id.* § 74.351(r)(5)(C) (requiring that an expert on the causal relationship between a breach of the standard of care and injury be a physician).

[13] According to the Merck Manual: "Disseminated intravascular coagulation is a condition in which small blood clots develop throughout the bloodstream, blocking small blood vessels. The increased clotting depletes the platelets and clotting factors needed to control bleeding, causing excessive bleeding." Joel L. Moak, *Disseminated Intravascular Coagulation*, MERCK MANUAL CONSUMER VERSION (Sept. 2016), http://www.merckmanuals.com/home/blood-disorders/ bleeding-due-to-clotting-disorders/disseminated-intravascular-coagulation-dic (last visited June 2, 2017, copy in case file).

[14] ___ S.W.3d ___, ___ (Tex. App.—Corpus Christi-Edinburg 2015) (mem. op.). In a separate appeal, the court of appeals affirmed the dismissal of Zamarripa's claims against Bay Area and EMS, concluding that Zamarripa's expert reports failed to show how the failure to divert along the way from Valley Regional to Bay Area caused Flores's death. *Zamarripa v. Bay Area Health Care Group, Ltd.*, No. 13-15-00024-CV, 2016 WL 6962009 (Tex. App.—Corpus Christi-Edinburg 2016, pet. denied [17-0132]).

[15] 60 Tex. Sup. Ct. J. 223 (Jan. 20, 2017).

## II

After briefing was completed, and six days before oral argument, Zamarripa argued for the first time that an interlocutory appeal is permitted from the denial of a motion to dismiss under the Act only when an expert report is untimely, not when it is inadequate. The argument goes as follows:

- Section 51.014(a)(9),[16] the interlocutory appeal authority invoked by Valley Regional, allows an appeal from an order denying relief sought by motion "under" Section 74.351(b).[17]

- Section 74.351(b) permits a motion to dismiss a health care liability claim when an expert report has not been served within the prescribed period.[18]

- A motion under Section 74.351(b) is thus one that complains a report is untimely, not that it is deficient.

- Even if deficient, Zamarripa's reports qualified as expert reports because each "contains a statement of opinion by an individual with expertise indicating that the claim asserted by the plaintiff against the defendant has merit."[19]

- Zamarripa's expert reports were unquestionably timely.

- Therefore, Section 51.014(a)(9) does not allow this interlocutory appeal.

We rejected this argument in *Lewis v. Funderburk*[20] because Section 74.351(b) specifically references and must be read with the paragraph that follows it, Section 74.351(c), which recognizes

---

[16] TEX. CIV. PRAC. & REM. CODE § 51.014(a)(9) ("A person may appeal from an interlocutory order [that] denies all or part of the relief sought by a motion under Section 74.351(b) . . . .").

[17] *Id.* § 74.351(b) ("If, as to a defendant . . . health care provider, an expert report has not been served within the period specified by Subsection (a), the court, on . . . motion . . . shall, subject to Subsection (c), enter an order that . . . dismisses the claim with respect to the . . . health care provider . . . .").

[18] *Id.*

[19] *Scoresby v. Santillan*, 346 S.W.3d 546, 549 (Tex. 2011).

[20] 253 S.W.3d 204 (Tex. 2008).

that "an expert report has not been served within the period specified by Subsection (a) [when] elements of the report are found deficient".[21] Zamarripa argues that *Lewis* is distinguishable because there, the trial court initially found the expert report deficient. We fail to grasp the distinction. In any event, we reaffirmed *Lewis* just last year in *Hebner v. Reddy*,[22] a case in which the trial court did not find the expert report deficient. In *Hebner*, we stated point-blank: "a motion to dismiss based on a timely but deficient report can be reviewed by interlocutory appeal".[23] Thus, Valley Regional's interlocutory appeal is permitted.

Zamarripa also argues that this Court lacks jurisdiction over Valley Regional's petition for review. We have jurisdiction in interlocutory appeals "when there is inconsistency in [Texas courts'] decisions that should be clarified to remove unnecessary uncertainty in the law and unfairness to litigants."[24] That inconsistency here, as we shall see, is in the decisions of the court of appeals and this Court interpreting the Act's expert-report requirement.

### III

We have held that to satisfy the Act's expert-report requirement, "[a]n expert must explain, based on facts set out in the report, how and why [a health care provider's] breach [of the standard

---

[21] *Id.* at 207–208; TEX. CIV. PRAC. & REM. CODE § 74.351(c).

[22] 498 S.W.3d 37 (Tex. 2016).

[23] *Id.* at 40 n.5.

[24] TEX. GOV'T CODE §§ 22.001(a)(2), (e) and 22.225(c), (e). This and other limitations on the Court's jurisdiction have been removed. Act of May 19, 2017, 85th Leg., R.S., ch. ___, §§ 1, 5–6, 2017 Tex. Gen. Laws ___, ___ [HB 1761] (effective Sept. 1, 2017).

of care] caused the injury. A bare expert opinion that the breach caused the injury will not suffice."[25] By agreeing with Zamarippa that "an expert report is not required to address 'proximate cause'",[26] the court of appeals simply confuses the matter, as it has before in writing that "an expert report need not contain a statement on foreseeability to be adequate".[27]

The Act's expert-report requirement seeks "to deter frivolous lawsuits by requiring a claimant early in litigation to produce the opinion of a suitable expert that his claim has merit."[28] Unquestionably, a plaintiff asserting a health care liability claim based on negligence, who cannot prove that her injury was proximately caused by the defendant's failure to meet applicable standards of care, does not have a meritorious claim.[29] While the plaintiff is not required to prove her claim with the expert report, the report must show that a qualified expert is of the opinion she can. The report need not use the words "proximate cause," "foreseeability," or "cause in fact." "[A] report's adequacy does not depend on whether the expert uses any particular 'magical words.'"[30] And merely

[25] *Van Ness v. ETMC First Physicians*, 461 S.W.3d 140, 142 (Tex. 2015); *accord Jelinek v. Casas*, 328 S.W.3d 526, 539–540 (Tex. 2010).

[26] ___ S.W.3d ___, ___ (Tex. App.—Corpus Christi-Edinburg 2015) (mem. op.).

[27] *Valley Reg'l Med. Ctr., Inc. v. Gonzalez*, No. 13-12-00572-CV, 2013 WL 2298470, at *3 (Tex. App.—Corpus Christi 2013, no pet.) (mem. op.) ("There is no mention in the statute of . . . proximate cause, and Texas law does not impose a requirement to establish the elements that must be proved at trial at this stage in the proceedings."); *Rio Grande Reg'l Hosp. v. Ayala*, No. 13-11-00686-CV, 2012 WL 3637368, at *19 (Tex. App.—Corpus Christi 2012, pet. denied) (mem. op.) (disagreeing that "an expert report must opine on whether the specific injuries sustained by the claimant could have been foreseen by the healthcare defendants").

[28] *Scoresby v. Santillan*, 346 S.W.3d 546, 552 (Tex. 2011).

[29] *IHS Cedars Treatment Ctr. of DeSoto, Tex., Inc. v. Mason*, 143 S.W.3d 794, 798 (Tex. 2004) ("The elements of a negligence cause of action are the existence of a legal duty, a breach of that duty, and damages proximately caused by the breach.").

[30] *Bowie Mem'l Hosp. v. Wright*, 79 S.W.3d 48, 53 (Tex. 2002).

incanting words does not suffice. "An expert's simple *ipse dixit* is insufficient to establish a matter; rather, the expert must explain the basis of his statements to link his conclusions to the facts."[31] In showing how and why a breach of the standard of care caused injury, the expert report must make a good-faith effort to explain, factually, how proximate cause is going to be proven:

> Proximate cause has two components: (1) foreseeability and (2) cause-in-fact. For a negligent act or omission to have been a cause-in-fact of the harm, the act or omission must have been a substantial factor in bringing about the harm, and absent the act or omission—*i.e.*, but for the act or omission—the harm would not have occurred.[32]

This is the causal relationship between breach and injury that an expert report must explain to satisfy the Act.

Nurse Spears's report states that Valley Regional nurses' standards of care were (1) to advocate for further treatment there and against transfer to Bay Area, and (2) to not allow Flores to be transferred to Bay Area, and that they breached those standards. Spears, as we have noted, could not opine on causation.[33] That was left to Harlass, who stated only that by "permitting and facilitating the transfer," Valley Regional caused Flores to be in an ambulance when she suffered a placental abruption and cardiac arrest, leading to her death. But as Harlass himself explains, it was Dr. Ellis who ordered Flores's transfer, not Valley Regional. Harlass does not explain *how* Valley Regional permitted or facilitated Flores's transfer, or even whether Valley Regional had any say in the matter.

---

[31] *Earle v. Ratliff*, 998 S.W.2d 882, 890 (Tex. 1999).

[32] *Rodriguez-Escobar v. Goss*, 392 S.W.3d 109, 113 (Tex. 2013) (per curiam).

[33] TEX. CIV. PRAC. & REM. CODE § 74.351(r)(5)(C) (requiring that an expert on the causal relationship between a breach of the standard of care and injury be a physician).

Nor does Spears. Spears states that Valley Regional should have investigated Flores's fibrinogen levels and abdominal pain further, but neither she nor Harlass explains how that would have averted the transfer. Neither Spears nor Harlass explains how Valley Regional had either the right or the means to persuade Dr. Ellis not to order the transfer or to stop it when he did.

Zamarripa's response is that the Act does not require such explanations in expert reports. But without factual explanations, the reports are nothing more than the *ipse dixit* of the experts, which we have held are clearly insufficient. The court of appeals erred in holding to the contrary.

The Act allows a trial court to grant one 30-day extension to cure a deficiency in an expert report,[34] and a court must grant an extension if a report's deficiencies are curable.[35] Valley Regional argues that whether to transfer Flores was a medical decision which its nurses could not make,[36] and therefore Zamarripa's expert reports cannot be cured to show that it caused Flores's transfer. Valley Regional appears to be correct with respect to statements in the expert reports indicating that Valley Regional permitted Flores's transfer. But Nurse Spears's report seems to suggest that Valley Regional breached its standard of care in not providing Dr. Ellis information that would have persuaded him to change his mind. While the report does not explain how that could have happened,

---

[34] *Id.* § 74.351(c) ("If an expert report has not been served within the period specified by Subsection (a) because elements of the report are found deficient, the court may grant one 30-day extension to the claimant in order to cure the deficiency.").

[35] *See Scoresby v. Santillan*, 346 S.W.3d 546, 549 (Tex. 2011).

[36] Texas law prohibits nurses from practicing medicine. TEX. OCC. CODE § 155.001, –.003 (providing that no person may "practice medicine" without a medical license); *id.* § 151.002(a)(13) ("'[p]racticing medicine' means the diagnosis, treatment, or offer to treat a mental or physical disease or disorder . . . or injury. . . ."); *id.* § 301.002(2), (4)–(5) (barring nurses from "acts of medical diagnosis or the prescription of therapeutic or corrective measures").

we cannot say it would be impossible. The trial court here must be given the opportunity to consider an extension.[37]

*    *    *    *    *

Accordingly, the court of appeals' judgment is reversed and the case is remanded to the trial court for further proceedings in accordance with this opinion.

Nathan L. Hecht
Chief Justice

Opinion delivered: June 9, 2017

---

[37] Valley Regional also contends that Nurse Spears was unqualified to opine on the standard of care for a registered nurse in a labor and delivery unit because she was not practicing in that field when she provided her report or when Flores died, and she now practices in hemotology and oncology areas. But Section 74.351(r)(5)(B) does not require an expert to have the same specialty as the health care provider she evaluates. *See Caviglia v. Tate*, 363 S.W.3d 298, 303 (Tex. App.—El Paso 2012, no pet.); *see also Keo v. Vu*, 76 S.W.3d 725, 732 (Tex. App.—Houston [1st Dist.] 2002, pet. denied) (noting broad agreement among the courts of appeals). The trial court was within its discretion to determine that Nurse Spears's training as a registered nurse and her prior experience in the labor and delivery unit qualified her to opine on the standard of care. *See* TEX. CIV. PRAC. & REM. CODE § 74.402(b)(3).