**Affirmed and Opinion Filed September 6, 2023**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-23-00209-CV

## DARREN SCHUHMACHER, M.D., Appellant
## V.
## GLENN BROYLES, Appellee

**On Appeal from the 95th District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-22-10104**

## MEMORANDUM OPINION

Before Justices Partida-Kipness, Reichek, and Breedlove
Opinion by Justice Breedlove

The trial court denied appellant Darren Schuhmacher, M.D.'s motion to dismiss appellee Glenn Broyles's health care liability claim and overruled Schuhmacher's objections to Broyles's expert report. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351. Concluding that the trial court did not abuse its discretion, we affirm.

## BACKGROUND

On August 27, 2020, Broyles underwent a lumbar spinal epidural steroid injection from Eric Jenkins, M.D.[1] Broyles alleges that he immediately began having signs and symptoms indicating a dural tear and leak of cerebrospinal fluid (CSF). Dr. Jenkins performed a blood patch procedure on September 1, 2020, but the procedure did not relieve Broyles's pain.

Dr. Schumacher then performed another blood patch procedure on September 9, 2020, that was successful in stopping the CSF leak. Broyles, however, alleges that "other problems persisted and worsened." Broyles contends that subsequent MRIs showed that blood had been injected into his spinal canal "at the time of the blood patch procedures."

Broyles sued Dr. Schuhmacher and others for negligence. In support of his claim, he proffered a report by Lon J. Lutz, M.D., who opined that "blood had been injected into [Broyles's] spinal canal by Dr. Jenkins and Dr. Schuhmacher" during the blood patch procedures, proximately causing nerve injury.

Dr. Lutz stated the standard of care for epidural blood patch procedures:

> In performing either an epidural steroid injection or an epidural blood patch, the standard of care applicable to Drs. Jenkins and Schuhmacher required that they be familiar with spinal anatomy; that they utilize techniques and technology available to them to identify the epidural space where the injections of medication and then autologous blood would occur; that they inject medication and blood only into that space;

---

[1] Dr. Jenkins and Pain Management Physicians of Dallas, PLLC d/b/a Dallas Pain Consultants are defendants in the underlying case but are not parties to this appeal.

and that they neither injure Mr. Broyles' dura nor inject fluids under the dura into the spinal canal.

Dr. Lutz explained that "[d]uring the blood patch procedure performed on September 1, 2020, Dr. Jenkins injected the blood patch directly into Mr. Broyles' spinal canal—not into the epidural space, but subdural. This was a grave error and caused Mr. Broyles immediate and severe nerve injury."

Dr. Lutz then discussed the blood patch procedure by Dr. Schuhmacher on September 9 and Broyles's eventual diagnosis:

> Dr. Schuhmacher['s] . . . attempt . . . was successful in stopping Mr. Broyles' cerebrospinal fluid leak and his related headaches, but his other problems persisted and worsened. [A subsequent] . . . MRI of [Broyles's] lumbar spine . . . showed that blood had been injected into his spinal canal by Dr. Jenkins and Dr. Schuhmacher.
>
> Mr. Broyles was eventually diagnosed with a condition known as "cauda equina syndrome." Cauda equina syndrome is caused by the compression of a collection of nerve roots called the cauda equina. Nerves send and receive electrical signals all across your body. The collection of nerve roots, shaped like a horse's tail, is located at the bottom of the human spinal cord. Compression of these nerves causes damage to the nerves because they cannot receive the oxygen and nutrients necessary for their survival. The greater the compression and the longer it lasts, the more damage can be expected. In this case, the injection of blood into Mr. Broyle[s'] spinal canal caused the nerve compression which in turn resulted in his nerve injury.
>
> Nerves in the cauda equina allow movement and sensation in a person's legs and urinary bladder. Compressed cauda equina nerves can cause pain, weakness, urinary incontinence and other symptoms.
>
> Mr. Broyles suffered permanent injury to these nerves and as a result has permanent pain and disability.
>
> A "proximate cause" of this lifetime of pain, embarrassment, and disability was the negligence of Dr. Jenkins in puncturing Mr. Broyle[s'] dura during the epidural steroid injection of August 27th,

–3–

2020, and the subsequent negligence of Dr. Jenkins and Dr. Schuhmacher in injecting blood into Mr. Broyles' spinal canal during the blood patch procedures of September 1 and 9, 2020.

Dr. Schuhmacher filed objections to Dr. Lutz's report and a motion to dismiss Broyles's claims against him, alleging that "Dr. Lutz's report is insufficient under Chapter 74, as it fails to adequately inform Dr. Schuhmacher of the complaints against him and does not provide sufficient information for the Court to determine whether Plaintiff's alleged claims against Dr. Schuhmacher have merit." He argued that the report was deficient because it contained only "conclusory and inadequate opinions" regarding the standard of care, any breach of the standard of care, and causation.

After a hearing, the trial court denied Dr. Schuhmacher's motion to dismiss Broyles's claim. In one issue, Dr. Schuhmacher contends the trial court abused its discretion by denying his objections to Dr. Lutz's expert report because the report fails to set forth (1) how Dr. Schuhmacher breached the standard of care and (2) how the alleged breach caused injury to Broyles.

## APPLICABLE LAW AND STANDARD OF REVIEW

Chapter 74 of the Texas Civil Practice and Remedies Code requires claimants in health care liability cases to serve an expert report on each defendant. TEX. CIV. PRAC. & REM. CODE § 74.351. The report must fairly summarize "the expert's opinions as of the date of the report regarding applicable standards of care, the manner in which the care rendered by the physician or health care provider failed to

–4–

meet the standards, and the causal relationship between that failure and the injury, harm, or damages claimed." *Id.* § 74.351(r)(6). The purpose of this requirement "is to weed out frivolous malpractice claims in the early stages of litigation, not to dispose of potentially meritorious claims." *Abshire v. Christus Health Se. Tex.*, 563 S.W.3d 219, 223 (Tex. 2018).

"Importantly, the trial court need only find that the report constitutes a 'good faith effort' to comply with the statutory requirements." *Id.* (citing TEX. CIV. PRAC. & REM. CODE § 74.351(*l*)). "[A]n expert report demonstrates a 'good faith effort' when it '(1) inform[s] the defendant of the specific conduct called into question and (2) provid[es] a basis for the trial court to conclude the claims have merit.'" *Id.* (quoting *Baty v. Futrell*, 543 S.W.3d 689, 693–94 (Tex. 2018)). A report "need not marshal all the claimant's proof," but "a report that merely states the expert's conclusions about the standard of care, breach, and causation" is insufficient. *Id.* The "court's job at this stage of the litigation is not to weigh the report's credibility; that is, the court's disagreement with the expert's opinion does not render the expert report conclusory." *Id.* at 226.

In addition, "the expert report must make a good-faith effort to explain, factually, how proximate cause is going to be proven," although the report need not use the words "proximate cause," "foreseeability," or "cause in fact." *Columbia Valley Healthcare Sys., L.P. v. Zamarripa*, 526 S.W.3d 453, 460 (Tex. 2017). "[T]he expert must explain the basis of his statements to link his conclusions to the facts."

*Id.* (internal quotation omitted). "[C]ourts must view the report in its entirety, rather than isolating specific portions or sections, to determine whether it includes" the required information. *Baty*, 543 S.W.3d at 694.

To establish a causal relationship between the injury and the defendant's negligent act or omission, the expert report must show the defendant's conduct was a substantial factor in bringing about the harm, and, absent this act or omission, the harm would not have occurred. *Aramada v. Yates*, No. 05-20-004960-CV, 2021 WL 5563763, at *2 (Tex. App.—Dallas Nov. 29, 2021, no pet.) (mem. op.). Causation is generally established through evidence of a "reasonable medical probability" that the injury was caused by the negligence of the defendant, meaning that it is more likely than not that the ultimate harm or condition resulted from such negligence. *See id.* "An expert may show causation by explaining a chain of events that begins with a defendant doctor's negligence and ends in injury to the plaintiff." *Id.* (internal quotation omitted). The report must explain "to a reasonable degree, how and why the breach [of the standard of care] caused the injury based on the facts presented." *Jelinek v. Casas*, 328 S.W.3d 529, 539–40 (Tex. 2010); *Quinones v. Pin*, 298 S.W.3d 806, 814 (Tex. App.—Dallas 2009, no pet.) (to satisfy Chapter 74's causation requirement, "the expert report must include a fair summary of the expert's opinion regarding the causal relationship between the breach of the standard of care and the injury, harm, or damages claimed"). "We determine whether a causation opinion is

sufficient by considering it in the context of the entire report." *Aramada*, 2021 WL 5563763, at *2 (internal quotation omitted).

## DISCUSSION

Dr. Schuhmacher contends that "[n]owhere in Dr. Lutz's report does he set forth any facts which demonstrate Dr. Schuhmacher injected blood into Plaintiff's spinal canal." He relies on Dr. Lutz's statement that the September 9, 2020, procedure by Dr. Schumacher "was successful in stopping Mr. Broyles' cerebrospinal fluid leak and his related headaches." He argues that "[t]here is no proof the blood found in Plaintiff's spinal canal was placed there by Dr. Schuhmacher. In fact, Dr. Lutz's report acknowledges that Dr. Schuhmacher's blood patch injection on 9/09/20 was successful in *stopping* Plaintiff's CSF leak and headaches, which plainly indicates Dr. Schuhmacher properly injected blood in the epidural space." Dr. Schuhmacher contends Dr. Lutz's report "arguably sets forth a standard of care for the blood patch procedure" but fails to explain how Dr. Schuhmacher failed to comply with the applicable standard of care. Dr. Schuhmacher also contends the report "is completely void of any explanation of how and why the alleged breach caused injury."

Citing *Jelinek*, Dr. Schuhmacher argues that "Dr. Lutz provides no explanation or proof that Dr. Schuhmacher injected blood into Mr. Broyles's spinal canal during the 9/9/20 blood patch." He argues that an expert must "explain, to a reasonable degree, how and why the breach caused the injury based on the facts

–7–

presented." *See Jelinek*, 328 S.W.3d at 536. In *Jelenik*, the report's only discussion of causation consisted of a statement that the physician's breach of the standard of care in "reasonable medical probability, resulted in a prolonged hospital course and increased pain and suffering being experienced by Mrs. Casas." *Id.* at 539 ("Aside from repeating essentially the same phrase twice more, the report says nothing more regarding causation."). Because the report lacked "any explanation linking the expert's conclusion to the relevant facts," it was "conclusory on causation." *Id.* at 540.

Dr. Lutz's report does not suffer from similar deficiencies. Within the four corners of his report, Dr. Lutz explains the standard of care required for the blood patch procedure, requiring the physician to identify the epidural space where the injections would occur, to inject medication and blood only into that space, and to "neither injure Mr. Broyles' dura nor inject fluids under the dura into the spinal canal." Dr. Lutz then explains how Dr. Jenkins and Dr. Schuhmacher deviated from the standard of care by injecting blood into Broyles's spinal canal, initially causing a leak of cerebrospinal fluid and later, nerve compression and permanent nerve injury. Dr. Lutz relies on an MRI, performed after Dr. Schuhmacher's procedure, "which showed that blood had been injected into [Broyles's] spinal canal by Dr. Jenkins and Dr. Schuhmacher." *See Baty*, 543 S.W.3d at 695 (expert opinion that defendant breached standard of care by "sticking [the optic nerve] with the retrobulbar needle" was not conclusory and met Chapter 74's standards).

Dr. Schuhmacher argues there is no proof that he injured Broyles's dura or injected fluids under the dura into the spinal canal because "according to Dr. Lutz, there was already blood in the spinal canal placed there by Dr. Jenkins" in an earlier procedure. He also complains that there is "no detailed factual explanation linking Dr. Schuhmacher's actions to Plaintiff's injury." But "[a]n expert report need not marshal all the plaintiff's proof necessary to establish causation at trial" or "anticipate and rebut all possible defensive theories that may ultimately be presented to the trial court." *Fortner v. Hosp. of the Sw., LLP*, 399 S.W.3d 373, 383 (Tex. App.—Dallas 2013, no pet.). "[T]he fact a plaintiff may not prove causation at trial does not mean an expert report was inadequate." *Id.*; *see also Avalon Residential Care Homes, Inc. v. Jones*, No. 05-17-01321-CV, 2018 WL 2926381, at *3 (Tex. App.—Dallas June 7, 2018, no pet.) (mem. op.) (that co-defendants "may have owed and breached the same duty" to the plaintiff did not render expert's opinion about appellant deficient).

We conclude that Dr. Lutz's report represents a good faith effort to provide his opinions about the applicable standard of care, the manner in which the care failed to meet that standard, and the causal relationship between the failure and the claimed injury. *See Fortner*, 399 S.W.3d at 383–84. Dr. Lutz's report contains sufficient information to inform Dr. Schuhmacher of the specific conduct that Broyles has called into question and to provide a basis for the trial court to conclude

that the claims have merit. *See id.* Accordingly, we decide Dr. Schuhmacher's issue against him.

**CONCLUSION**

The trial court's February 16, 2023, order denying Dr. Schumacher's objections and motion to dismiss is affirmed.

230209f.p05

/Maricela Breedlove/
MARICELA BREEDLOVE
JUSTICE



## Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

DARREN SCHUHMACHER, M.D.,
Appellant

No. 05-23-00209-CV      V.

GLENN BROYLES, Appellee

On Appeal from the 95th District
Court, Dallas County, Texas
Trial Court Cause No. DC-22-10104.
Opinion delivered by Justice
Breedlove. Justices Partida-Kipness
and Reichek participating.

In accordance with this Court's opinion of this date, the trial court's February 16, 2023, order denying appellant Darren Schuhmacher, M.D.'s objections and motion to dismiss is **AFFIRMED**.

It is **ORDERED** that appellee Glenn Broyles recover his costs of this appeal from appellant Darren Schuhmacher, M.D.

Judgment entered this 6th day of September, 2023.