**AFFIRM; and Opinion Filed August 1, 2018.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-17-01350-CV

**NEXION HEALTH AT DUNCANVILLE, INC. D/B/A DUNCANVILLE HEALTHCARE AND REHABILITATION CENTER, Appellant**
**V.**
**RUTH J. MCCRAY, INDIVIDUALLY AND ON BEHALF OF THE ESTATE OF JOHN R. MCCRAY, DECEASED, Appellee**

**On Appeal from the 68th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-17-00654**

## MEMORANDUM OPINION

Before Justices Lang-Miers, Stoddart, and Boatright
Opinion by Justice Boatright

Nexion Health at Duncanville, Inc. d/b/a Duncanville Healthcare and Rehabilitation Center appeals the denial of its motion to dismiss, which asserted that appellee, Ruth J. McCray, individually and on behalf of the estate of John R. McCray, failed to comply with the expert-report requirement of Texas Civil Practice and Remedies Code section 74.351. The sole issue in this appeal is whether appellee's expert report sufficiently addresses the causal link between Nexion's failure to meet applicable standards of care and the claimed injuries. Finding no abuse of discretion by the district court, we affirm.

**BACKGROUND**

Appellee is the surviving spouse of the late John McCray. In 2010, McCray was admitted to the Duncanville nursing facility owned and operated by Nexion. At the time of his admission, McCray had a history of dementia, hypertension, and chronic kidney disease. Appellee alleges that McCray's condition worsened in late 2014, and he began having more difficulty performing activities of daily living. By early 2015, McCray was at a high risk of developing pressure ulcers. Appellee claims that, despite this risk, McCray was not closely monitored or evaluated for skin breakdown. As a result, he developed numerous pressure ulcers by March 2015, including an ulcer on his left hip that became infected. He was also unable to swallow as of March 17, and laboratory tests revealed that he was severely dehydrated. He thereafter became unresponsive and was rushed to Methodist Charlton Medical Center. McCray died at Charlton that same day, March 17. His death certificate lists the cause of death as complications from dementia and respiratory failure.

Appellee sued Nexion and Dr. Deandre Antoine Brown, a physician who provided care to McCray while he was at Nexion. Appellee's suit was brought individually, as a wrongful-death action, and as a survival action as the representative of McCray's estate. Appellee asserted a medical negligence claim against each defendant, plus a vicarious liability claim against both defendants premised on their employment, training, supervision, and monitoring of the staff who treated McCray. Pursuant to section 74.351(a) of the Civil Practice and Remedies Code, TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(a) (West 2017), appellee timely served a fourteen-page expert report of Dr. Manuel A. Eskildsen, MD, MPH, CMD. Dr. Eskildsen is a California physician who is board certified in Geriatric Medicine and Internal Medicine. He is also a Certified Medical Director who serves as medical director of the Brentwood Health Care Nursing Home. Dr. Eskildsen's report will be discussed in more detail below, but in summary, he opines that Nexion breached the applicable standards of care by failing to monitor McCray's fluid intake and by failing

–2–

to implement the measures necessary to maintain McCray's skin integrity. In Dr. Eskildsen's opinion, these breaches of care caused McCray's injuries and were substantial contributing factors in his death.

Nexion filed objections to Dr. Eskildsen's report, and a motion to dismiss appellee's claims, based on the argument that the report did not establish a causal relationship between Nexion's purported breach and McCray's injuries. Dr. Brown did not object to the report. The district court held a hearing on Nexion's motion to dismiss on November 6, 2017, and it signed an order that same day denying the motion. This interlocutory appeal followed.

## ANALYSIS

Nexion raises a single issue. It contends that Dr. Eskildsen's report failed to adequately demonstrate causation, and therefore the district court erred in denying Nexion's motion to dismiss. We review a trial court's determination regarding the sufficiency of an expert report under an abuse-of-discretion standard. *Baty v. Futrell*, 543 S.W.3d 689, 693 & n.4 (Tex. 2018). We "defer to the trial court's factual determinations if they are supported by evidence, but review its legal determinations de novo." *Van Ness v. ETMC First Physicians*, 461 S.W.3d 140, 142 (Tex. 2015) (per curiam). A trial court abuses its discretion if it acts without reference to guiding rules or principles. *Id.*

An "expert report" must provide "a fair summary of the expert's opinions" regarding, among other topics, "the causal relationship" between the health care provider's breach of the applicable standards of care and the claimant's injury. TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(r)(6) (West 2017). A causal relationship is established by proof that the defendant's negligence was a "substantial factor in bringing about the harm" and that, absent such negligence, "the harm would not have occurred." *Nexion Health at Lancaster, Inc. v. Wells*, No. 05-16-00018-CV, 2016 WL 4010834, at *3 (Tex. App.—Dallas July 25, 2016, no pet.) (mem. op.).

–3–

A court must grant a motion challenging the adequacy of an expert report only if it appears that the report "does not represent an objective good faith effort to comply with the definition of an expert report." TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(*l*) (West 2017). To constitute a "good-faith effort," the report must provide "information sufficient to (1) 'inform the defendant of the specific conduct the plaintiff has called into question,' and (2) 'provide a basis for the trial court to conclude that the claims have merit.'" *Jelinek v. Casas*, 328 S.W.3d 526, 539 (Tex. 2010) (quoting *Bowie Mem'l Hosp. v. Wright*, 79 S.W.3d 48, 52 (Tex. 2002) (per curiam)). The purpose of the expert report requirement "is to deter frivolous claims, not to dispose of claims regardless of their merits." *Scoresby v. Santillan*, 346 S.W.3d 546, 554 (Tex. 2011).

In evaluating an expert report, we are limited to its four corners, "which need not 'marshal all the plaintiff's proof' but must include the expert's opinion on each of the three main elements," which include the element of causation. *Jelinek*, 328 S.W.3d at 539 (quoting *Wright*, 79 S.W.3d at 52). Bare conclusions will not suffice, nor may omissions be supplied by inference. *Scoresby*, 346 S.W.3d at 556. The report must explain the basis for the expert's statements and link his conclusions to the facts. *Columbia Valley Healthcare Sys., L.P. v. Zamarripa*, 526 S.W.3d 453, 460 (Tex. 2017). In other words, the report "must make a good-faith effort to explain, factually, how proximate cause is going to be proven." *Id.* "An expert's mere conclusion that 'in medical probability' one event caused another differs little, without an explanation tying the conclusion to the facts, from an ipse dixit, which the supreme court has consistently criticized." *Wells*, 2016 WL 4010834, at *3 (citing *Jelinek*, 328 S.W.3d at 539). However, a plaintiff need not present evidence in the report as if he were actually litigating the merits of his claim. *Baylor Med. Center at Waxahachie v. Wallace*, 278 S.W.3d 552, 560 (Tex. App.—Dallas 2009, no pet.). For example, the statute does not require the report to rule out every possible cause of the injury claimed. *Id.* at 562.

*Severe dehydration*

Dr. Eskildsen criticizes Nexion for failing to (i) monitor McCray's oral intake, or (ii) inform McCray's clinicians of changes, such as dry mucous membranes, that would indicate dehydration and concurrent renal failure. According to Dr. Eskildsen's report, there are no nursing notes in McCray's medical record during the period between February 22, 2015, and March 13, 2015. A March 16 note—"Monitor fluid intake"—was the first sign that Nexion was monitoring McCray's hydration status. Dr. Eskildsen opines that Nexion's failure to monitor McCray's hydration in the previous days and weeks caused him to develop hypematremia, i.e., high sodium concentration, which was indicative of severe dehydration. Related to this point, the report states that the March 17 lab tests revealed that McCray had likely suffered from dehydration for more than two or three days, and it elsewhere notes that the tests showed that McCray "was experiencing profound dehydration and renal failure over the course of more than just 24 hours." Dr. Eskildsen opines that McCray's dehydration resulted in severe renal failure, which is an inability of the kidneys to remove waste and balance fluids. This, in turn, caused hyperkalemia, i.e., high potassium, which led to cardiac arrhythmias, cardiac arrest, and then death. Dr. Eskildsen concludes that the foregoing injuries were a substantial contributing factor in McCray's death and that earlier treatment, including intravenous fluids, would have saved McCray's life.

Nexion faults Dr. Eskildsen's report for failing to explain how monitoring hydration and fluid intake would have prevented McCray's dehydration. It urges that the report does not state when an intravenous fluids treatment would have had to be administered to prevent McCray's death, nor does the report explain how such a treatment would have saved McCray's life. In Nexion's view, Dr. Eskildsen was required to explain why the steps that it took on March 16 and 17 were insufficient, or how an earlier monitoring and treatment would have led to a better outcome.

Nexion relies on *Wells*, in which a report written by Dr. Eskildsen failed to provide a fair summary of causation under the circumstances of that case. 2016 WL 4010834, at *3–6. Wells resided at a Nexion facility after undergoing bowel surgery at a local hospital. *Id.* at *1. On September 19, 2013, a nurse at Nexion noted that Wells' abdomen was semi-firm and mildly distended and that his bowel sounds were sluggish. *Id.* at *1, *3. She contacted medical management for gastrointestinal concerns and indicated that Wells would have an esophagram in the morning. *Id.* The following day, Nexion transferred Wells to a local hospital with complaints of stomach pain and gas. *Id.* at *1. He later died from complications arising from a bowel obstruction. *Id.*

The expert report in *Wells* stated that the lack of treatment on September 19 caused Wells to develop a new perforation in his bowel at the site of his prior bowel surgery. *Id.* at *4. This perforation led to a leakage of bowel fluid and contents directly into the abdomen, which resulted in a blood infection that led to Wells' death. *Id.* The report stated that, had Nexion notified Wells' family and physician on September 19, he would have been evaluated in a hospital setting, which would have allowed him to receive intravenous fluids, bowel rest, and if necessary, resection of the obstructed bowel. *Id.* at *5. This Court held that the report was insufficient because it failed to explain why the evaluation and treatment that Wells received on September 20 were insufficient or how evaluation one day earlier would have led to a better outcome. *Id.* For example, the report did not state that had Wells been evaluated in a hospital setting on September 19, his bowel would have been resected, nor did the report opine that a specific identified intervention on September 19 would have prevented Wells' bowel obstruction that caused his death. *Id.*

As compared to the report in *Wells*, Dr. Eskildsen's report in this case identifies a specific treatment that in his opinion would have saved McCray's life had the treatment occurred sooner. Dr. Eskildsen states that Nexion failed to monitor McCray's hydration and fluid intake in the days

and weeks prior to March 16, which caused him to become severely dehydrated. According to Dr. Eskildsen, such monitoring would have revealed the dehydration before it reached a critical stage. This, in turn, would have given McCray earlier access to intravenous fluids, which would have prevented the hyperkalemia and cardiac arrest that led to his death. Dr. Eskildsen also opines that McCray "coded" before he could receive any significant care upon his transfer to Charlton on March 17. Unlike the report in *Wells*, the report in this case identifies the specific treatment that in Dr. Eskildsen's opinion would have saved McCray's life had it been applied sooner.

The other cases cited by Nexion are likewise distinguishable. The expert report in *Jelinek* said nothing regarding causation other than the conclusory statement that the doctor's breach in reasonable medical probability resulted in the patient's "prolonged hospital course and increased pain and suffering." 328 S.W.3d at 539. *Hollingsworth v. Springs* involved a report that failed to explain what actions would have resulted had the nurses called for help earlier. 353 S.W.3d 506, 523 (Tex. App.—Dallas 2011, no pet.). In *Debra Knightstep, P.A. v. Jeffers*, the report did not state how the medical caregiver's failure to physically examine the patient caused her death or how performing appropriate additional testing would have prevented her death. No. 05–12–01067–CV, 2013 WL 3487933, at *3 (Tex. App.—Dallas July 10, 2013, no pet.) (mem. op.). In contrast to the reports at issue in these cases, Dr. Eskildsen's report explains how an appropriate monitoring and treatment of McCray's dehydration would have prevented his death.

In sum, we conclude that Dr. Eskildsen's report sufficiently links Nexion's breach to McCray's injury, thus constituting an "objective good faith effort" to provide a "fair summary" of Dr. Eskildsen's causation opinion. TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(*l*), (r)(6).

*Pressure ulcers*

Nexion also urges that Dr. Eskildsen's report fails to explain how Nexion's purported breach of the applicable standards of care led to the development of pressure ulcers on McCray's

skin, or how these ulcers led to McCray's death. It likewise argues that the report fails to explain how or why McCray would have had a better outcome had Nexion taken the actions that Dr. Eskildsen claims that it should have. Our conclusion that the report provides a fair summary of causation related to appellee's dehydration theory of liability renders unnecessary our consideration of appellee's pressure-ulcers theory. *See Certified EMS, Inc. v. Potts*, 392 S.W.3d 625, 632 (Tex. 2013) ("[A]n expert report that adequately addresses at least one pleaded liability theory satisfies the statutory requirements, and the trial court must not dismiss in such a case.").

## CONCLUSION

The district court did not abuse its discretion in denying Nexion's motion to dismiss. We overrule Nexion's sole issue and affirm the court's judgment.

/Jason Boatright/

JASON BOATRIGHT
JUSTICE

171350F.P05



## Court of Appeals
## Fifth District of Texas at Dallas

# JUDGMENT

NEXION HEALTH AT DUNCANVILLE, INC. D/B/A DUNCANVILLE HEALTHCARE AND REHABILITATION CENTER, Appellant

No. 05-17-01350-CV     V.

RUTH J. MCCRAY, INDIVIDUALLY AND ON BEHALF OF THE ESTATE OF JOHN R. MCCRAY, DECEASED, Appellee

On Appeal from the 68th Judicial District Court, Dallas County, Texas
Trial Court Cause No. DC-17-00654.
Opinion delivered by Justice Boatright. Justices Lang-Miers and Stoddart participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

It is **ORDERED** that appellee RUTH J. MCCRAY, INDIVIDUALLY AND ON BEHALF OF THE ESTATE OF JOHN R. MCCRAY, DECEASED recover her costs of this appeal from appellant NEXION HEALTH AT DUNCANVILLE, INC. D/B/A DUNCANVILLE HEALTHCARE AND REHABILITATION CENTER.

Judgment entered this 1st day of August, 2018.