**REVERSE and REMAND and Opinion Filed June 21, 2019**



In The

**Court of Appeals**

**Fifth District of Texas at Dallas**

_____

**No. 05-18-01182-CV**
_____

**DEBBIE WHEELER, INDIVIDUALLY AND AS THE REPRESENTATIVE OF THE ESTATE OF LARRY WHEELER, KIM ADAMS, AND KRISTIE STEWART, Appellants**

**V.**

**METHODIST RICHARDSON MEDICAL CENTER AND METHODIST HEALTH SYSTEM FOUNDATION, Appellees**

**On Appeal from the 416th Judicial District Court**
**Collin County, Texas**
**Trial Court Cause No. 416-01327-2016**

# MEMORANDUM OPINION

Before Justices Whitehill, Molberg, and Reichek
Opinion by Justice Whitehill

The trial court dismissed appellants' health care liability claims because it concluded that their expert report was deficient as to causation. The pivotal question is whether the expert's report sufficiently explained the how and why of his causation opinion. The report stated that the deceased's life probably would have been saved had his nurses timely alerted a treating physician to his declining blood oxygen levels because the physician probably would have properly performed a successful, non-emergent intubation under favorable conditions. Because we conclude that the report contained sufficient specificity for Chapter 74 purposes, we hold that the trial court abused its discretion and accordingly reverse and remand.

# I. BACKGROUND

## A. Factual Allegations

This is a wrongful death and survival action. We draw the following facts from the allegations in appellants' live petition and their expert reports.

Larry Wheeler was admitted to Methodist Hospital on February 8, 2015, with pulmonary edema thought to be secondary to congestive heart failure, and he required immediate intubation and mechanical ventilation. He underwent a left carotid endarterectomy on February 11 and a coronary artery bypass, mitral valve repair, and aortic valve replacement on February 13.

Wheeler remained intubated after his surgery until he was extubated the morning of February 18. His oxygen saturation levels declined to around 92–93% that afternoon. That night, shortly after midnight, his oxygen saturation was 57%, and a code blue was started.

Dr. Jose Gutierrez intubated Wheeler at 0052 hours. The intubation was difficult, and later Wheeler's "pulse was lost." A chest x-ray indicated that the tube had been placed in Wheeler's esophagus instead of his trachea. Wheeler was extubated, and a second intubation was performed at 0101 hours.

On February 19, Wheeler was diagnosed with hypoxic encephalopathy. A few days later, his family removed ventilator support and he soon died.

## B. Procedural History

Appellants sued appellees and Gutierrez asserting wrongful death and survival claims. They alleged that Gutierrez placed the tube in Wheeler's esophagus rather than in his trachea and that he negligently failed to verify that he had placed the tube correctly. They also alleged that appellees' nurses negligently "failed to institute a number of interventions" that would have helped correct Wheeler's "critically low oxygen saturations."

Appellants later served two expert reports. One was by nurse Claudia Estrada, and the other was by Dr. Jay S. Ellis, Jr., an anesthesiologist.

Appellees challenged the reports' sufficiency. Appellants responded and requested a thirty-day extension to amend or supplement their reports. They also filed a brief supporting their extension request, and they attached an amended Ellis report. The trial court dismissed the case without expressly ruling on appellants' request for a time extension. Appellants appealed, and we reversed, holding that the trial court abused its discretion by failing to give appellants an opportunity to cure the deficiencies in their reports. *Wheeler v. Methodist Richardson Med. Ctr.*, No. 05-17-00332-CV, 2017 WL 6048153, at *4 (Tex. App.—Dallas Dec. 7, 2017, pet. denied) (mem. op.).

After remand, appellants again served their original reports and the amended Ellis report. Appellees objected again, this time based solely on the premise that the amended Ellis report did not adequately establish causation. Appellants responded. The trial court again sustained appellees' objections and dismissed the claims against them.

Appellants timely appealed. *See* TEX. CIV. PRAC. & REM. CODE § 51.014(a)(10). Dr. Gutierrez is not a party to this appeal.

## II. ANALYSIS

Appellants' sole issue urges that the trial court erred by dismissing their claims because the amended Ellis report adequately addresses causation, the only element that appellees challenged in the trial court. We agree with appellants for the following reasons.

### A. Standard of Review and Applicable Law

We review a trial court's decision to dismiss a case based on an inadequate expert report for abuse of discretion. *Abshire v. Christus Health Se. Tex.*, 563 S.W.3d 219, 223 (Tex. 2018) (per curiam). A trial court has no discretion in determining what the law is or in applying the law to

the facts. *Sanchez v. Martin*, 378 S.W.3d 581, 587 (Tex. App.—Dallas 2012, no pet.). A clear failure by the trial judge to analyze or apply the law correctly constitutes an abuse of discretion. *Id.*

A health care liability claimant must serve an expert report on each defendant not later than 120 days after the defendant answers. TEX. CIV. PRAC. & REM. CODE § 74.351(a); *Abshire*, 563 S.W.3d at 223. A defendant may seek dismissal if the report is untimely or deficient. CIV. PRAC. § 74.351(b), (*l*); *Abshire*, 563 S.W.3d at 223. In determining whether a report is deficient, the court is limited to the information contained within the four corners of the report. *Abshire*, 563 S.W.3d at 223.

An expert report is sufficient if it "provides a fair summary of the expert's opinions . . . regarding applicable standards of care, the manner in which the care rendered . . . failed to meet the standards, and the causal relationship between that failure and the injury." CIV. PRAC. § 74.351(r)(6); *see also Abshire*, 563 S.W.3d at 223.

Moreover, a report is sufficient if it constitutes "an objective good faith effort" to comply with the statute. CIV. PRAC. § 74.351(*l*); *see also Abshire*, 563 S.W.3d at 223. A report constitutes a good faith effort if it (i) informs the defendant of the specific conduct called into question and (ii) provides a basis for the trial court to conclude that the claims have merit. *Abshire*, 563 S.W.3d at 223.

The report need not marshal all the claimant's proof, but a report that states only the expert's conclusions about the standard of care, breach, and causation is insufficient. *Id.*

As to causation, the expert must explain how and why the alleged negligence caused the injury in question. *Id.* at 224. A conclusory statement of causation is insufficient; instead, the expert must explain the basis of his statements and link his conclusions to specific facts. *Id.* The

report need not prove the entire case or account for every known fact; the report is sufficient if it makes a good faith effort to explain, factually, how proximate cause will be proven. *Id.*

The supreme court's *Abshire* opinion provides the controlling paradigm for the present case. There, Sue Abshire suffered from brittle bone disease. She repeatedly sought treatment from Christus Hospital for various pain and breathing symptoms, and the nurses inconsistently documented her brittle bone disease in her chart. She received various treatments for her symptoms, including physical therapy, and she was eventually diagnosed with a compression fracture of her T-5 vertebrae that left her a paraplegic. She sued the hospital and furnished an expert report stating that the nurses' failure to document a complete and accurate assessment led to a delay in proper medical care and thus to Abshire's paralysis.

The supreme court held that the report adequately "dr[ew] a line directly from the nurses' failure to properly document Abshire's [brittle bone disease] and back pain, to a delay in diagnosis and proper treatment (imaging of her back and spinal fusion), to the ultimate injury (paraplegia)." *Id.* at 225.

**B.**	**The Reports in This Case**

**1.**	**Nurse Estrada's Report**

Nurse Estrada's unchallenged report addressed the standard of care and breach elements as to appellees and gave context for Ellis's causation opinions. Estrada opined that appellees' nurses should have recognized that Wheeler began showing signs of respiratory distress and potential respiratory failure at 5:00 p.m. on February 18. Wheeler's records showed that his oxygen saturation was then "in the low 90% range," and he "continued to exhibit low oxygen saturations, increased heart rate and increased blood pressure during the evening hours." Estrada opined that, among other things, the nurses should have notified the physician in charge and asked him to assess Wheeler.

## 2.     Dr. Ellis's Amended Report

Ellis's amended report addressed both Gutierrez and appellees.  Ellis opined that Gutierrez negligently handled Wheeler's treatment after he misplaced the tube in Wheeler's esophagus instead of his trachea.   Specifically, Gutierrez "breached the standard of care by failing to adequately verify that the endotracheal tube placed in Mr. Wheeler was in the trachea and not in the esophagus as the chest x-ray proved."  Because of that negligence, Wheeler's brain was oxygen deprived for nine minutes, causing his permanent brain injury and eventual death.

Ellis based his causation opinions against appellees on Estrada's opinion that the nurses breached the standard of care by failing to notify Wheeler's treating physician about his deteriorating condition during the evening of February 18.  Ellis's report stated:

> While the failed intubation is a clear cause of injury in this instance, earlier intervention would have prevented the need for emergency intubation in the first place.  I have reviewed the report of Nurse Claudia Estrada who opines that the nursing staff should have notified Mr. Wheeler's treating physician concerning his deteriorating condition on the evening of February 18.  **Had the physician in charge been notified before Mr. Wheeler's situation became critical, in reasonable probability, he would have ordered the patient re-intubated on a non-emergent basis and resumed mechanical ventilation**.  This would have prevented the patient's major de-saturation and avoided the need for a Code Blue to be called, in the first place.  Nonemergent intubation is always preferable.  The patient is in a more stable physiologic state allowing for a more methodical, deliberate process.  This allows for careful planning, the opportunity to secure special equipment if needed and to arrange for adequate assistance in performing the intubation.  Having extra sets of hands and special equipment dramatically increases the chance of a successful intubation and can often avoid the problem of esophageal intubation experienced by Mr. Wheeler.  This would also allow for the performance of the intubation to be done by someone who routinely does intubation in the ICU such as a critical care physician or anesthesiologist.  There is no practitioner who would willingly choose emergent intubation over a careful, planned elective procedure.  The failure to notify the treating physician of the deterioration of Mr. Wheeler's condition allowed Mr. Wheeler's situation to become critical and require emergent intubation that, unfortunately, was not successfully performed.
>
> . . . .
>
> . . .  **[T]he hospital staff's failure to notify any physician of Mr. Wheeler's deteriorating condition lead [sic] to his receiving no treatment until his**

–6–

**situation had become critical.  Earlier intervention likely would have given more opportunities for treatment and likely prevented his injury**.

**. . . I have expressed all of my opinions in this report in reasonable medical probability** . . . .

(Emphases added.)

## C.     Applying the Law to the Facts

### 1.     *Abshire* and Ellis's Amended Report

Appellants argue that Ellis's causation opinion is sufficient because it states that the nurses' negligence caused Wheeler's injuries and explains how and why this is so.  We agree.

To begin, the report adequately states a but-for causal relationship between the nurses' breach of the standard of care shown by Estrada's report (failing to notify the physician of Wheeler's low oxygen saturation at 5:00 p.m. on February 18) and Wheeler's ultimate injuries. Specifically, the emphasized passages quoted above show that, in reasonable medical probability, Wheeler would not have suffered his injuries had the nurses timely notified the physician in charge about Wheeler's oxygen desaturation.  Thus, contrary to appellees' argument that Ellis failed to show but-for causation, his amended report shows but-for causation by a reasonable medical probability.  *See Covey v. Lucero*, No. 05-16-00164-CV, 2016 WL 7163835, at *2 (Tex. App.— Dallas Nov. 17, 2016, no pet.) (mem. op.) (explaining that (i) expert report must express causation in terms of probability rather than mere possibility and (ii) "magical words" are not required).

Next, we conclude that Ellis's causation opinion is not conclusory.  That is, it adequately explains how and why the nurses' negligence caused Wheeler's injuries.  *See Abshire*, 563 S.W.3d at 224.  The report does this by explaining what would have happened differently, and why, had the nurses timely notified the physician in charge about Wheeler's oxygen desaturation:

- The physician, in reasonable probability, would have ordered Wheeler to be intubated on a non-emergent basis.

- The non-emergent intubation would have taken place under more favorable circumstances including the following: (i) the patient would have been in a

more stable physiologic state, (ii) the intubation process would have been more methodical and deliberate, with careful planning, (iii) any needed special equipment and adequate assistance could have been secured, which can often avoid the problem of esophageal intubation that Wheeler experienced, and (iv) the intubation could have been done by someone who routinely does them, such as a critical care physician or an anesthesiologist.

We conclude that Ellis's explanation adequately links the nurses' alleged negligence and Wheeler's injuries. Had the nurses called Wheeler's physician in charge sooner, Wheeler probably would have been intubated before any emergency arose. And a non-emergent intubation probably would have avoided Wheeler's injuries because the conditions of a non-emergent intubation are more favorable for success than the conditions of an emergency intubation are. Thus, the report adequately explained the links in the causal chain. *See Abshire*, 563 S.W.3d at 224–25; *see also New Med. Horizons, II, Ltd. v. Milner*, No. 01-17-00827-CV, 2019 WL 1388359, at *14–17 (Tex. App.—Houston [1st Dist.] Mar. 28, 2019, no pet.) (causation expert report was sufficient in case involving nurses' alleged failure to alert physicians to patient's deterioration).

### 2. *Zamarripa*

Nonetheless, appellees rely heavily on *Columbia Valley Healthcare System, L.P. v. Zamarripa*, 526 S.W.3d 453 (Tex. 2017), to argue that Ellis's amended report is insufficient regarding appellees' causation. That reliance is misplaced because the hospital in that case could not have prevented the patient transfer that later contributed to the injury; whereas here timely action by appellees probably would have produced a different outcome.

In *Zamarripa*, a doctor ordered his patient to be transferred to another facility 159 miles away, and the patient died after suffering a cardiac arrest en route. *Id*. at 457. The claimant sued the hospital where the patient was originally being treated, and the claimant's causation expert report said that the hospital had caused the patient's death by permitting and facilitating the transfer. *Id*. at 457–58. The supreme court held that the report supplied only a conclusory

causation opinion because it did not explain how the hospital permitted or facilitated the transfer or how the hospital could have stopped it despite the doctor's order. *Id*. at 461.

Here, by contrast, Ellis's amended report explained how the nurses' conduct would have changed the course of events—had the nurses alerted the physician in charge, he probably would have ordered a non-emergent intubation and thereby averted Wheeler's injuries.

### 3. Appellees' Remaining Arguments

Appellees also argue that a necessary link is missing from Ellis's causal chain, specifically "the connection between the emergent nature of the intubation and the incorrect performance of said intubation and accompanying failure to timely verify tube placement after intubation." (Footnote omitted.) They acknowledge that Ellis addressed this connection to some extent when he said, "Having extra sets of hands and special equipment dramatically increases the chance of a successful intubation and can often avoid the problem of esophageal intubation experienced by Mr. Wheeler." But they argue that this explanation in insufficient because it lacks a factual basis of its own.

We reject appellees' argument. Ellis opined that, in reasonable medical probability, non-negligent conduct by the nurses would have caused the physician in charge to order a non-emergent intubation, which in turn would have prevented Wheeler's "major de-saturation" and avoided the code blue. This causally connected the nurses' negligence with the later-performed unsuccessful and damage-causing emergency intubation.

Further, Ellis gave several factual bases for his opinion, citing not only the availability of additional equipment and human assistants but also the facts that (i) Wheeler would have been more stable, (ii) the procedure would have been more methodical and better planned, and (iii) a more experienced physician could have been called in to perform the procedure. This is sufficient to make his ultimate causation opinion nonconclusory.

Appellees also argue that Ellis's report does not show that the nurses' breach was a substantial factor in causing Wheeler's injuries. "Substantial factor" is a subelement of cause in fact. *See Rogers v. Zanetti*, 518 S.W.3d 394, 402 (Tex. 2017).

Cause in fact exists "when the act or omission was a substantial factor in bringing about the injuries, and without it, the harm would not have occurred." *IHS Cedars Treatment Ctr. of DeSoto, Tex., Inc. v. Mason*, 143 S.W.3d 794, 799 (Tex. 2004). A breach of the standard of care is not a substantial factor in causing the plaintiff's injuries if the connection between the breach and the injuries is too attenuated or if the breach did no more than furnish the conditions that made the injury possible. *Curnel v. Houston Methodist Hosp.-Willowbrook*, 562 S.W.3d 553, 561–62 (Tex. App.—Houston [1st Dist.] 2018, no pet.).

Appellees argue that the substantial factor test is not met here because even an earlier, non-emergent intubation could have been performed incorrectly and could have been followed by the same failure to properly verify tube placement that Dr. Ellis said occurred in this case. But we disagree that these possibilities negate substantial factor causation in this case. Ellis opined, in reasonable medical probability, that earlier, non-emergent intubation would have prevented Wheeler's injuries, and he explained the facts supporting his opinion. The connection between the nurses' alleged negligence and the injuries was not attenuated, nor did the alleged negligence merely furnish a condition that made Wheeler's injury possible. *See Miller v. Lone Star HMA, L.P.*, No. 05-17-00954-CV, 2018 WL 3991191, at *3 (Tex. App.—Dallas Aug. 21, 2018, pet. denied) (mem. op.) (the substantial factor requirement is usually satisfied when but-for causation is present).

Our recent *Greenville SNF, LLC v. Webster* opinion is distinguishable. *See* No. 05-18-00038-CV, 2018 WL 6716621 (Tex. App.—Dallas Dec. 21, 2018, no pet.) (mem. op.). In that case, a rehabilitation center employee found one of the center's residents, Frances Robinson, in a

non-responsive state with an oxygen saturation level of 72%, but the employee did not seek emergency assistance until forty-five minutes had passed. Robinson sustained brain injuries and died a few weeks later.

In the subsequent suit against the rehabilitation center, Robinson's estate furnished an expert report opining that (i) the center breached the standard of care by not immediately calling 911 and (ii) the breach probably caused Robinson's brain injuries, which in turn caused her death. *Id*. at *5. But that report provided no factual explanation supporting its causation opinion, such as an explanation of the medical treatment that could have prevented Robinson's injuries had emergency help been summoned immediately. Ellis's amended report, by contrast, explains what treatment would have been employed absent the nurses' negligence (a non-emergent intubation) and why that treatment probably would have been effective.

### III.  CONCLUSION

In sum, Ellis's amended report sufficiently linked the nurses' alleged breach of the standard of care and Wheeler's subsequent injuries. *See Abshire*, 563 S.W.3d at 225. Accordingly, we hold that his amended report included a fair summary of his opinion concerning the causal relationship between the breach of the standard of care and the damages claimed, and the trial court abused its discretion by concluding otherwise. We sustain appellants' sole issue on appeal.

We reverse the trial court's order sustaining appellees' objections to Ellis's amended report and dismissing the case with prejudice. We remand the case to the trial court for further proceedings consistent with this opinion.

/Bill Whitehill/
BILL WHITEHILL
JUSTICE

181182F.P05

–11–



## Court of Appeals
## Fifth District of Texas at Dallas

# JUDGMENT

DEBBIE WHEELER, INDIVIDUALLY
AND AS THE REPRESENTATIVE OF
THE ESTATE OF LARRY WHEELER,
KIM ADAMS, AND KRISTIE
STEWART, Appellants

On Appeal from the 416th Judicial District
Court, Collin County, Texas
Trial Court Cause No. 416-01327-2016.
Opinion delivered by Justice Whitehill.
Justices Molberg and Reichek participating.

No. 05-18-01182-CV        V.

METHODIST RICHARDSON MEDICAL
CENTER AND METHODIST HEALTH
SYSTEM FOUNDATION, Appellees

In accordance with this Court's opinion of this date, the trial court's September 19, 2018 Order Sustaining Defendant Methodist Richardson Medical Center and Methodist Health System Foundation's Statutory Objections to Plaintiffs' Amended "Expert Report" of Jay Ellis, M.D., is **REVERSED** in its entirety and this cause is **REMANDED** to the trial court for further proceedings consistent with the opinion.

It is **ORDERED** that appellants Debbie Wheeler, Individually and as the Representative of the Estate of Larry Wheeler, Kim Adams, and Kristie Stewart recover their costs of this appeal from appellees Methodist Richardson Medical Center and Methodist Health System Foundation.

Judgment entered June 21, 2019.