In The
*Court of Appeals*
*Ninth District of Texas at Beaumont*
NO. 09-20-00243-CV

**STEWARD MEDICAL GROUP D/B/A PERMIAN PREMIER HEALTH SERVICES AND JOHN LEE, Appellants**

**V.**

**MICHELLE ARMSTRONG, INDIVIDUALLY AND AS REPRESENTATIVE OF THE ESTATE OF BOBBY FOSHA, AND PEGGY FOSHA, Appellees**

**On Appeal from the 136th District Court**
**Jefferson County, Texas**
**Trial Cause No. D-205,748**

## MEMORANDUM OPINION

The Texas Medical Liability Act requires trial courts to dismiss lawsuits alleging a healthcare liability claim unless the plaintiffs, shortly after they file the suit, serve the defendants with a report that is "an objective good faith effort to comply" with the expert-report requirements in Chapter 74 of the Act.[1] In this

---

[1]Tex. Civ. Prac. & Rem. Code Ann. § 74.351(*l*).

interlocutory appeal, we must decide whether the trial court abused its discretion by denying the objections the defendants lodged to the plaintiffs' Chapter 74 reports claiming the plaintiffs' reports did not represent a good faith effort to provide the reports required by the Act. We conclude that since no abuse of discretion occurred, the trial court's order denying the defendants' motion to dismiss should be affirmed.

Background

Michelle Armstrong (as the executor of the Estate of Bobby Fosha) and Peggy Fosha (Bobby Fosha's widow) sued Dr. John Lee and Steward Medical Group under the Texas Wrongful Death and Survival Act and alleged they negligently caused Bobby Fosha's death.[2] According to the Plaintiffs' Original Petition, Bobby died from an adverse side reaction to Celexa, an antidepressant prescribed by Dr. Lee during an office visit on October 23, 2018. In their suit, the plaintiffs alleged that Dr. Lee failed to warn Bobby about the increased risk of suicide they claimed is associated with antidepressants like Celexa. They also alleged that several days after Bobby started taking the medication, Dr. Lee learned from one of Bobby's family members that Bobby was confused after starting the Celexa. According to the motion

---

[2]*See id*. § 71.002(b) (under the Texas Wrongful Death Statute, a person is liable "for damages arising from an injury that causes an individual's death if the injury was caused by the person's or his agent's or servant's wrongful act, neglect, carelessness, unskillfulness, or default"); *id*. § 71.021(a) (under the Texas Survival Act, a "cause of action for personal injury to the health, reputation, or person of an injured person does not abate because of the death of the injured person").

to dismiss and the plaintiffs' response, Celexa comes with warnings, including one stating: "Patients of all ages who are started on antidepressant therapy should be monitored appropriately and observed closely for clinical worsening, suicidality, or unusual changes in behavior." In the lawsuit, the plaintiffs alleged Dr. Lee negligently

- failed to prescribe Bobby an appropriate starting dose of Celexa and instead, gave him four times the recommended starting dose under FDA dosing guidelines,

- failed to assess and account for Bobby's past medical history in prescribing a treatment plan that involved Celexa,

- failed to properly screen Bobby for depression and assess his risk of suicide before prescribing Celexa,

- failed to warn Bobby about the increased risk of suicide associated with Celexa during the office visit and after learning several days later from one of Bobby's family members that he seemed confused,

- failed to closely monitor Bobby's Celexa at a reduced dose after being told by a member of Bobby's family that Bobby was suffering from symptoms Dr. Lee should have recognized as associated with "Celexa-induced delirium[,]" and

- failed to discontinue Bobby's Celexa and instead instructed Bobby's family to have Bobby take Celexa at a reduced dose after Dr. Lee learned Bobby appeared manic and confused after he started taking Celexa.

The plaintiffs also alleged the above acts and omissions proximately caused Bobby's death.

3

Shortly after filing suit, the plaintiffs served Dr. Lee and Steward Medical with two reports, signed by doctors, to meet the requirements of Chapter 74. One report, written by Dr. Michael Dominguez, reflects that he is a board-certified family physician with experience practicing in the field of family medicine, the same area of medicine as Dr. Lee. The other report, signed by Dr. Thomas Kosten, reflects that he is a board-certified psychiatrist and neurologist who has published over 750 papers and books in his field as a psychiatrist, an area that includes the diagnosis and treatment of anxiety disorders, the risk of suicide associated with such disorders, and treating these patients who have these disorders with medications like Celexa.

In Dominguez's report, he criticized Dr. Lee for failing to obtain a complete medical history after seeing Bobby in his office on October 23, failing to use screening tools that he claims are required to diagnose and document the severity of a patient's anxiety before prescribing an antidepressant, prescribing Celexa at a higher dose than the one the FDA recommends for patients as old as Bobby, and failing to instruct Bobby's daughter to take Bobby to an emergency room after learning that Bobby had suffered an adverse reaction after he started the Celexa at the dosage Dr. Lee prescribed. According to Dr. Dominguez, had Dr. Lee not negligently prescribed the medication at too high a dose and had he monitored Bobby based on the standard that applies to starting patients on Celexa, Bobby "more

4

likely than not and to a reasonable degree of medical probability" would not have shot himself and died.

Dr. Kosten's report also criticizes Dr. Lee for (1) giving Bobby a prescription for Celexa at a strength higher than the FDA-recommended starting dose; (2) failing to review Bobby's medical records to assess his risks of taking Celexa given Bobby's family history, which includes a history showing that Bobby's father committed suicide; (3) failing to screen Bobby properly to evaluate the severity of Bobby's depression; (4) failing to warn Bobby about the adverse side-effects of Celexa as related to the medication's increased risk of suicide; and (5) failing to advise Bobby on October 25 to discontinue the Celexa after Dr. Lee learned from Bobby's daughter that Bobby appeared to be confused and anxious after he started taking Celexa. As to causation, Dr. Kosten's report states the above acts and omissions breached the standard of care that applied to treating patients like Bobby. The report concludes the violations he identified in "the standards of care most likely caused [Bobby's] prescribed overdose of Celexa [and] his suicide . . . within a reasonable degree of medical probability."

In October 2020, the defendants moved to dismiss the plaintiffs' suit. In their joint motion, they argued that Dr. Dominguez's and Dr. Kosten's reports "are woefully deficient" because they do not sufficiently explain how Dr. Lee's alleged acts and omissions caused Bobby's death. The defendants also argued the two

5

reports of the plaintiffs' experts did not link the experts' respective conclusions to the actual facts relevant to Bobby's case when compared with what the defendants assert is Bobby's actual history based on the medical records that documents the treatment he received during several months before he died. When the defendants moved to dismiss the suit, they also suggested that Dr. Kosten's report misrepresents the results of Bobby's autopsy by stating that Bobby shot himself in the mouth rather than under his chin, as stated in the report from Bobby's autopsy. The defendants conclude that these discrepancies required the trial court to find the plaintiffs failed to serve them with good-faith reports that represent a fair summary explaining what Dr. Lee did or failed to do and how his alleged acts and omissions caused Bobby's death.[3]

After considering the defendants' motion, together with the plaintiffs' response and the defendants' reply, the trial court denied the defendants' joint motion to dismiss. This interlocutory appeal followed.[4]

---

[3]The only medical record the defendants attached to their motion to dismiss and reply were a copy of the autopsy report, signed by Dr. John Ralston in January 2019. Other than the autopsy report, the defendants failed to provide the trial court with any of the other medical records they referred to in their pleadings.

[4]*Id*. § 51.014(a)(9) (authorizing interlocutory appeals form rulings granting or denying a party's objection to Chapter 74 reports).

Standard of Review

We discuss the standard of review that applies in light of the defendants' arguments claiming the plaintiffs' Chapter 74 reports do not accurately and fairly summarize the information in the medical records the experts reviewed when forming their respective opinions. First, the defendants argue the trial court abused its discretion when it refused to agree with them that the expert reports from Dr. Dominguez and Dr. Kosten did not constitute the good-faith efforts that apply to compliant reports under Chapter 74.[5] Second, Dr. Lee and Steward Medical argue that Dr. Dominguez's and Dr. Kosten's reports fail to adequately explain how Dr. Lee's negligent acts and omissions caused Bobby's death.

Under Chapter 74, "[a]n expert report is sufficient . . . if it 'provides a fair summary of the expert's opinion . . . regarding the applicable standards of care, the manner in which the care rendered . . . failed to meet the standards, and the causal relationship between the failure and the injury.'"[6] A report represents a "good faith effort" when it "'(1) inform[s] the defendant of the specific conduct called into question and (2) provid[es] a basis for the trial court to conclude the claims have merit.'"[7] We review rulings by trial courts that rule on objections to Chapter 74

---

[5]*Id*. § 74.351(*l*).

[6]*Abshire v. Christus Health Se. Tex.*, 563 S.W.3d 219, 223 (Tex. 2018) (per curiam) (quoting Tex. Civ. Prac. & Rem. Code Ann. § 74.351(r)(6)).

[7]*Id*. (quoting *Baty v. Futrell*, 543 S.W.3d 689, 693-94 (Tex. 2018)).

reports for abuse of discretion.[8] Under Chapter 74, an expert report "need not marshal all the plaintiff's proof," but it must do more than a bare conclusion stating the defendant breached the applicable standard of care that applied to the patient and that the breach caused the patient's injury.[9] When deciding if the trial court abused its discretion, the question is "not whether, in the opinion of the reviewing court, the facts present an appropriate case for the trial court's action."[10] Instead, the question is "whether the court acted without reference to any guiding rules and principles" that apply to its ruling.[11]

When evaluating challenges to Chapter 74 reports, "[t]he trial court should look no further than the report itself, because all the information relevant to the inquiry is contained within the document's four corners."[12] On appeal, we examine the Chapter 74 reports as a whole.[13] That is, when the record in the appeal includes more than one Chapter 74 report, the reports are read together to decide whether the trial court abused its discretion when ruling on a defendant's motion to dismiss.[14] To

---

[8]*See Abshire*, 563 S.W.3d at 223; *Van Ness v. ETMC First Physicians*, 461 S.W.3d 140, 142 (Tex. 2015) (per curiam); *Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios*, 46 S.W.3d 873, 877-78 (Tex. 2001).

[9]*Palacios*, 46 S.W.3d at 878-79.

[10]*Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241 (Tex. 1985); *see also Bowie Mem'l Hosp. v. Wright*, 79 S.W.3d 48, 52 (Tex. 2002) (per curiam).

[11]*Id.*

[12]*Wright*, 79 S.W.3d at 52.

[13]*See Baty*, 543 S.W.3d at 694.

[14]*Abshire*, 563 S.W.3d at 223.

be sure, (1) if a party argued in the trial court and argues in the appeal the Chapter 74 report misstates the facts in medical records the expert relied upon when writing the report, and (2) the record shows the trial court reviewed those records in ruling on a motion to dismiss, the appellate court may look to the same records the trial court had before it in deciding the motion to resolve an argument in the appeal that claims the trial court abused its discretion by finding the reports represented good-faith efforts to comply with Chapter 74.[15]

As to causation, Chapter 74 reports, when read together, must explain how the plaintiff's intend to prove the defendant's negligence caused the patient's injury.[16] That said, "[n]o particular words or formality are required" to explain how the healthcare provider's negligence caused the patient's injury, but the report must contain more than a conclusory statement explaining the expert's theory of causation to comply with the good-faith-report requirements of Chapter 74.[17] Nonetheless, to be *adequate* under Chapter 74, an expert's report need not meet the evidentiary

---

[15]*See* Tex. Civ. Prac. & Rem. Code Ann. § 74.351(*l*), (r)(5)-(6); *Christus Health Se. Tex. v. Broussard*, 306 S.W.3d 934 (Tex. App.—Beaumont 2010, no pet.); *Baptist Hospitals of Se. Tex. v. Carter*, No. 09-08-067 CV, 2008 Tex. App. LEXIS 2917109, at *3 n.4 (Tex. App.—Beaumont July 31, 2008, no pet.) (mem. op.).

[16]*Columbia Valley Healthcare Sys., L.P. v. Zamarripa*, 526 S.W.3d 453, 459-60 (Tex. 2017).

[17]*Scoresby v. Santillan*, 346 S.W.3d 546, 556 (Tex. 2011); *Jelinek v. Casas*, 328 S.W.3d 526, 539-40 (Tex. 2010).

requirements needed to make an expert's opinion relevant and admissible in a summary judgment proceeding or a trial.[18]

Analysis

We turn first to Dr. Lee's and Steward Medical's arguments that Dr. Kosten's report is not a good-faith report because his opinion, they say, hinged on his view that Bobby killed himself after placing the gun in his mouth. To be fair, Dr. Ralston's autopsy report does show that Dr. Kosten apparently failed to appreciate the fact that the autopsy report shows the bullet that entered Bobby's head entered his body from "[b]eneath the chin[.]" And nothing in the autopsy report suggests that Bobby placed the gun in his mouth. But even if Dr. Kosten's report is inaccurate about the exact point on Bobby's body that he shot himself, the report still shows that Dr. Ralston concluded the manner of Bobby's death was "suicide."

Dr. Kosten's report also explains why he thinks Bobby committed suicide. The report states "[t]he most likely cause of [Bobby's] suicide was the loss of frontal brain control over an impulsive action" after Bobby took Celexa. Thus, both the autopsy report and Dr. Kosten's report are consistent as to the manner of Bobby's death—suicide. And here, the question is whether the trial court abused its discretion by finding Dr. Kosten's report represented a good-faith effort to comply with

---

[18]*Miller v. JSC Lake Highlands Operations, LP*, 536 S.W.3d 510, 516 (Tex. 2017) (per curiam).

10

Chapter 74. As to that question, we think the trial court could have viewed the manner of death, suicide, as the crucial issue and viewed the discrepancy that exists in the reports over where the bullet entered Bobby's body as immaterial to Dr. Kosten's ultimate conclusion Bobby's lack of ability to control his impulses led him to take his own life based on the Celexa prescription he was given by Dr. Lee. For that reason, the trial court could reasonably reject the defendants' argument claiming that Dr. Kosten's report fails to include information that is sufficient to (1) inform them of the conduct the plaintiffs' petition questioned and (2) demonstrate why the plaintiffs' claims have merit.[19]

The defendants also claim there are other inconsistencies between the facts in Dr. Kosten's and Dr. Dominguez's reports describing Bobby's medical history and the facts the defendants found in Bobby's medical records. But except for the autopsy report, none of the other records the defendants pointed to in their motion were filed as exhibits to their motion. For that reason, Bobby's other records are outside the scope of review that applies to our review of the trial court's ruling that the defendants elected to appeal. Simply put, these alleged inconsistencies between

---

[19]*See Palacios*, 46 S.W.3d at 879. At this early stage of the proceedings, we note the question is not whether the plaintiffs will end up prevailing on their claims at trial.

11

the reports of the plaintiffs' experts and the information they say is in Bobby's medical records were not properly preserved for our review in the appeal.[20]

Next, we address whether, when reading the two reports together, the trial court could reasonably find the reports sufficient to explain how Dr. Lee's alleged acts and omissions violated the standards of care that applied to Bobby and caused his death. In our opinion, the trial court could reasonably find the reports of both experts informed the defendants of the conduct the plaintiffs questioned. Both reports describe the standard of care that applies to treating patients of Bobby's age with an antidepressant like Celexa and state that Dr. Lee breached the standard of care in starting Bobby at a higher than recommended dose. Both reports trace how Dr. Lee's alleged errors led to the adverse side effects that Dr. Dominguez and Dr. Lee opine prevented Bobby from controlling his urge to commit suicide, which they say is a known risk in patients prescribed antidepressants. In other words, both reports explain what Dr. Lee did, what he failed to do, and what the plaintiffs' experts claim he should have done to treat Bobby for anxiety. Read together, both reports also tie Dr. Lee's alleged negligence to Bobby's death.

The trial court could also reasonably reject the defendants' argument claiming the reports by the plaintiffs' experts are overly conclusory on the issue of causation. As to causation, Dr. Dominguez's report contains a paragraph stating:

---

[20]Tex. R. App. P. 33.1(a)(2).

A reasonable and prudent physician would have known that the maximum dose for a patient Mr. Fosha's age was 20 mg per day and would not have prescribed a 40 mg dose . . . . Dr. Lee prescribed citalopram at a dose higher than recommended for his age and higher than recommended for someone who was essentially treatment naive. He also failed to refer Mr. Fosha for immediate care when called by Mrs. Armstrong about her father's condition. Had Dr. Lee not prescribed Mr. Fosha an inappropriate dose of citalopram, it is more likely than not and to a reasonable degree of medical probability that Mr. Fosha would not have experienced the adverse effects of delirium and shot himself resulting in his death. Further, if Dr. Lee had responded to the concerns of Mr. Fosha's family appropriately by referring him for psychiatric evaluation when they were reported, it is also more likely than not and to a reasonable degree of medical probability that Mr. Fosha would not have had the opportunity to shoot himself resulting in his death.[21]

Likewise, the trial court could have reasonably rejected the defendants' arguments that Dr. Kosten's report failed to inform them of the conduct the plaintiffs questioned or to explain the plaintiffs' theory of causation. Dr. Kosten's report summarizes his findings as to causation as follows:

Dr. Lee committed two major negligent behaviors leading to Mr. Fosha's suicide from what was clearly a serotonin syndrome and delirium induced by the high dose of Celexa. Most importantly among the negligent behaviors and the proximal cause of Mr. Fosha's death was restarting Celexa 40mg after discontinuing this medication about eight months previously . . . Furthermore, when after a single dose of 40 mg clear signs of a serotonin syndrome were evident to even layman, the Celexa should have been immediately stopped. Mr. Fosha then should have been sent to the emergency department . . . The most likely cause of [Mr. Fosha's] suicide was the loss of frontal brain control over

---

[21]In his report, Dr. Dominguez identified the drug that Bobby took as "citalopram." Citalopram is the generic name for Celexa. WebMD, https://www.webmd.com/drugs/2/drug-1701/citalopram-oral/details (last visited April 12, 2021).

an impulsive action that had otherwise been controlled before this severe serotonin syndrome occurred.

The defendants also assert the reports focus on the conduct of Dr. Lee, not Steward Medical. But the plaintiffs' suit alleges that Dr. Lee is an employee of Steward Medical and that Steward Medical is legally responsible for Dr. Lee's acts as his employer. When healthcare liability claims include claims alleging a theory of vicarious liability against the physician's employer, "a report that adequately implicates the actions of that party's agents or employees is sufficient."[22] For this reason, the trial court could also reasonably find the reports sufficient as to Steward Medical.

Conclusion

We hold the defendants' issues lack merit. For that reason, the trial court's order denying Dr. Lee's and Steward Medical's joint motion to dismiss is

AFFIRMED.

_____
HOLLIS HORTON
Justice

Submitted on January 5, 2021
Opinion Delivered April 22, 2021

Before Kreger, Horton, and Johnson, JJ.

---

[22]*Gardner v. U.S. Imaging, Inc.*, 274 S.W.3d 669, 671-72 (Tex. 2008); *see Renaissance Healthcare Sys., Inc. v. Swan*, 343 S.W.3d 571, 587 (Tex. App.— Beaumont 2011, no pet.).

14