**Reversed and Remanded and Memorandum Majority and Dissenting Opinions filed May 16, 2024.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-22-00873-CV

---

## DAVID ZINSMEISTER & MARLENE ZINSMEISTER, Appellants

## V.

## HOUSTON METHODIST HOSPITAL, Appellee

---

**On Appeal from the 334th District Court
Harris County, Texas
Trial Court Cause No. 2020-58803**

---

### MEMORANDUM OPINION

Appellants David Zinsmeister ("David") and Marlene Zinsmeister ("Marlene") appeal the trial court's order granting the motion to dismiss filed by appellee The Methodist Hospital d/b/a Houston Methodist Hospital ("Methodist Hospital"). *See* Tex. Civ. Prac. & Rem. Code Ann. § 74.351. In two issues, David and Marlene argue the trial court erred in dismissing the case because the expert report of Mark Murray, M.D. ("Dr. Murray"), was sufficient to show that their health-care liability claim against Methodist Hospital was not frivolous. We

reverse the trial court's order and remand for further proceedings.

## I. BACKGROUND

On September 21, 2020, David and Marlene filed suit against Methodist Hospital, alleging negligence in David's care following gastrointestinal surgery. Appellants assert in their petition that the negligence of Methodist Hospital and its staff "resulted in prolonged hospitalization, pain and suffering, and unnecessary costs of care." Appellants alleged that David suffered from complications following surgery and was having a longer than normal stay in the hospital, and that as a result, Methodist Hospital should have appointed a hospitalist or internal-medicine doctor to evaluate David's condition from an internal medicine standpoint, which Methodist Hospital did not do. "David finally secured the assistance of an internal medicine specialist several weeks after the surgery by Dr. Bailey at Marlene's request. This led to assessment and treatment that should have been done much earlier. Instead, David was in the hospital for over one hundred days."

Appellants served Methodist Hospital with an expert report and subsequently an amended expert report authored by Dr. Murray, a board-certified doctor in internal medicine and currently practicing primarily as a hospitalist.[1] *See id.* Methodist Hospital filed a motion to dismiss appellants' claims, challenging the adequacy of Dr. Murray's amended expert report and arguing that Dr. Murray's amended report "failed to explain factually how assigning a hospitalist would have made a difference."

On October 25, 2022, the trial court signed an order granting Methodist

---

[1] In his amended expert report, Dr. Murray states "A 'hospitalist' is a physician who assesses and treats hospitalized patients including those who are pre-surgery, post-surgery[,] or hospitalized for acute or chronic conditions."

Hospital's motion to dismiss. This appeal followed.

## II.    DISCUSSION

In two issues, appellants argue the trial court erred in dismissing their lawsuit because Dr. Murray's expert report was sufficient to show that their health-care liability claim against Methodist Hospital was not frivolous.

## A.    APPLICABLE LAW

The Texas Medical Liability Act ("TMLA") requires health-care-liability claimants to timely serve each defendant physician with an adequate expert report. *E.D. by & through B.O. v. Tex. Health Care, P.L.L.C.*, 644 S.W.3d 660, 662 (Tex. 2022) (per curiam). An "expert report" under the TMLA means:

> a written report by an expert that provides a fair summary of the expert's opinions as of the date of the report regarding applicable standards of care, the manner in which the care rendered by the physician or health care provider failed to meet the standards, and the causal relationship between that failure and the injury, harm, or damages claimed.

Tex. Civ. Prac. & Rem. Code Ann. § 74.351(r)(6).

"A trial court must sustain a challenge to a report's adequacy if the report does not represent an objective good faith effort to provide a fair summary of the applicable standard of care, the defendant's breach of that standard, and how that breach caused the patient's harm." *Miller v. JSC Lake Highland Operations, LP*, 536 S.W.3d 510, 513 (Tex. 2017) (per curiam); *see* Tex. Civ. Prac. & Rem. Code Ann. § 74.351(*l*), (r)(6). "A good-faith effort must 'provide enough information to fulfill two purposes: (1) it must inform the defendant of the specific conduct the plaintiff has called into question, and (2) it must provide the basis for the trial court to conclude that the claims have merit.'" *Miller*, 536 S.W.3d at 513 (quoting *Bowie Mem'l Hosp. v. Wright*, 79 S.W.3d 48, 52 (Tex. 2002) (per curiam)). While the

3

expert report need not marshal all of the plaintiff's proof, *Jelinek v. Casas*, 328 S.W.3d 526, 539 (Tex. 2010), a report that merely states the expert's conclusions about the standard of care, breach, and causation does not fulfill these two purposes. *Palacios*, 46 S.W.3d at 879; *New Med. Horizons, II, Ltd. v. Milner*, 575 S.W.3d 53, 60 (Tex. App.—Houston [1st Dist.] 2019, no pet.); *see Scoresby*, 346 S.W.3d at 556 ("No particular words or formality are required, but bare conclusions will not suffice.").

Thus, an expert report must include sufficient detail to provide a "reasonable basis" for concluding that the case against the defendant has merit. *Jelinek*, 328 S.W.3d at 539–40; *Baylor Coll. of Med. v. Davies*, 599 S.W.3d 323, 328 (Tex. App.—Houston [14th Dist.] 2020, no pet.). To address causation sufficiently for the trial court to reasonably conclude that the claim has merit, "the expert must explain the basis of his statements and link conclusions to specific facts." *Abshire v. Christus Health Se. Tex.*, 563 S.W.3d 219, 224, 226 (Tex. 2018) (citing *Jelinek*, 328 S.W.3d at 536). "The explanation . . . must be factual, for 'without factual explanations, the reports are nothing more than the ipse dixit of the experts, which . . . are clearly insufficient.'" *Davies*, 599 S.W.3d at 328 (quoting *Columbia Valley Healthcare Sys., L.P. v. Zamarripa*, 526 S.W.3d 453, 461 (Tex. 2017)); *see also Arkoma Basin Expl. Co. v. FMF Assocs. 1990-A, Ltd.*, 249 S.W.3d 380, 389 (Tex. 2008) (noting that testimony is conclusory as a matter of law if it simply states a conclusion without any explanation).

As to the causation element, the report need not use the words "proximate cause," "foreseeability," or "cause in fact" to satisfy the TMLA's requirements but must show how and why a breach of the standard of care caused injury. *Zamarripa*, 526 S.W.3d at 460. In showing how and why a breach of the standard of care caused injury, the expert report must make a good-faith effort to explain,

factually, how proximate cause will be proven. *Id.* An expert report that has an analytical gap or missing link between the expert's statements regarding the healthcare provider's breach of the standard of care and the plaintiff's injuries is insufficient. *See Wright*, 79 S.W.3d at 53; *see, e.g.*, *Humble Surgical Hosp., LLC v. Davis*, 542 S.W.3d 12, 23–26 (Tex. App.—Houston [14th Dist.] 2017, pet. denied) (concluding that expert's "opinion on causation contains analytical gaps and missing links which render his opinion conclusory"). To determine whether the expert's causation conclusion is detailed enough, we read the expert's conclusion on causation in the context of the entire report, not piecemeal or in a vacuum. *Harvey v. Kindred Healthcare Operating, Inc.*, 578 S.W.3d 638, 653 (Tex. App.— Houston [14th Dist.] 2019, no pet.).

### B.   STANDARD OF REVIEW

We review a trial court's ruling on the sufficiency of an expert's report and on a motion to dismiss under the expert-report rule for an abuse of discretion. *Jelinek*, 328 S.W.3d at 539; *see* Tex. Civ. Prac. & Rem. Code Ann. § 74.351; *Miller*, 536 S.W.3d at 512. A court abuses its discretion if it acts in an arbitrary or unreasonable manner and without reference to any guiding rules or principles. *Crawford v. XTO Energy, Inc.*, 509 S.W.3d 906, 911 (Tex. 2017). And under an abuse-of-discretion standard, close calls must go to the trial court. *Id.*

### C.   ANALYSIS

Methodist Hospital objected to Dr. Murray's amended expert report and moved to dismiss appellants' claim, arguing that the report was conclusory as to causation. *See* Tex. Civ. Prac. & Rem. Code Ann. § 74.001(a)(13). Methodist Hospital argued that Dr. Murray's report did not identify what treatment a hospitalist would have ordered, did not compare that hypothetical treatment with the treatment David actually received, and did not explain "in a non-conclusory

5

"fashion" why a hospitalist's treatment would have been more effective.

Dr. Murray states in his amended report that the standard of care required Methodist Hospital to assign a hospitalist or internal medicine doctor to care for David after surgery, especially given the complications that arose; that Methodist Hospital breached the standard of care by not appointing this type of specialist; and that this breach caused David injury because it prevented the adequate treatment of his conditions, thereby keeping him in the hospital longer and leading to the worsening of his conditions.

Specifically, Dr. Murray's amended report provides that: David suffered a post-surgery complication of leakage at the surgical site and that this complication led to "distress, malnutrition, anemia, and apparently pulmonary complications"; the issues of electrolyte and blood chemistry disorders, anemia, and malnutrition are outside the realm of expertise of a general surgeon or even a specialized surgeon; David was being treated by his surgeon despite the complications persisting "to a point that the surgeon no longer was appropriately managing the patient without the assistance of a hospitalist"; "[t]he complications in this case are among one that could be assessed and treated appropriately by an internal medicine physician or hospitalist . . . ."; the absence of a qualified physician in internal medicine prevented the adequate treatment of David's complications and this "led to prolonged distress, malnutrition, anemia, and apparently pulmonary complications that are beyond the expertise of most surgeons including here "; "[c]o-management by hospitalists is very common and standard practice"; "it is well known in medicine" that most surgeons "are not up to date on medical issues that can and often do arise post-operatively"; and David improved and the complications were resolved after a hospitalist began to treat these conditions.

While Dr. Murray's expert report does not specifically state what different

6

treatment a hospitalist would have provided David as opposed to the treatment provided by David's surgeon, it does provide a fair summary of how proximate cause is going to be proven, provide a basis for the trial court to conclude that appellants' claims have merit, and inform Methodist Hospital of the conduct appellants call into question. *See E.D.*, 644 S.W.3d at 664 ("A report adequately addresses causation when the expert explains 'how and why' breach of the standard caused the injury in question by 'explain[ing] the basis of his statements and link[ing] conclusions to specific facts.'" (quoting *Abshire*, 563 S.W.3d at 224)); *Miller*, 536 S.W.3d at 513; *Palacios*, 46 S.W.3d at 878–79 ("A report need not marshal all of the plaintiff's proof, but it must include the expert's opinion on each of the elements identified in the statute."). Dr. Murray states that a surgeon is not capable of treating the complications that arose, that a hospitalist or an internal-medicine doctor is capable of treating those complications, that David's complications persisted for longer than they should have because a hospitalist or internal-medicine doctor was not appointed to his care when the complications arose and lingered post-surgery, that it is standard practice to appoint a hospitalist or internist in a situation such as this, and that David's condition improved and the complications were resolved only after a hospitalist was assigned to his care. *See Abshire*, 563 S.W.3d at 223–25; *Miller*, 536 S.W.3d at 515. Dr. Murray's amended report provides how and why the alleged negligence (Methodist Hospital's failure to assign a hospitalist as soon as the post-operative complications noted arose) caused David's complained-of injuries (unnecessary expenses and acute medical complications including malnutrition, blood chemistry disorders, and depression) by connecting conclusions to the facts (the surgeon was not capable of treating David's conditions, unlike a hospitalist or internal-medicine doctor, and David's condition improved only after a hospitalist was consulted). Thus, we conclude that Dr. Murray's statements on proximate cause are more than a mere conclusory

7

assertion. *See Jelinek*, 328 S.W.3d at 540; *Palacios*, 46 S.W.3d at 879 ("[T]o avoid dismissal, a plaintiff need not present evidence in the report as if it were actually litigating the merits. The report can be informal in that the information in the report does not have to meet the same requirements as the evidence offered in a summary-judgment proceeding or at trial."). Because we conclude that Dr. Murray's report is not conclusory as to causation, we conclude that the trial court abused its discretion when it granted Methodist Hospital's motion to dismiss. We sustain appellants' two issues.

## III.  CONCLUSION

We reverse the trial court's order and remand to the trial court for further proceedings.

/s/     Margaret "Meg" Poissant
Justice

Panel consists of Justices Wise, Zimmerer, and Poissant. (Wise, J., dissenting).