

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-24-00501-CV

———————————————

GREG STAATS, Appellant

V.

DR. JAMIE SINGLEY; DDS DENTURES & IMPLANT SOLUTIONS; AFFORDABLE DENTURES & IMPLANTS-FORT WORTH, P.A.; AFFORDABLE DENTURES & IMPLANTS, TEXAS, PLLC; AND DDS DENTURES AND IMPLANTS, Appellees

---

On Appeal from the 153rd District Court
Tarrant County, Texas
Trial Court No. 153-334018-22

---

Before Sudderth, C.J.; Wallach and Walker, JJ.
Memorandum Opinion by Justice Wallach

# MEMORANDUM OPINION

This appeal involves a health care liability claim under Chapter 74, Texas Civil Practice & Remedies Code (the Act). Greg Staats, Appellant, was Appellees' patient. Appellees are Dr. Jamie Singley, DDS, and related entities DDS Dentures & Implant Solutions; Affordable Dentures & Implants, Fort Worth, P.A.; Affordable Dentures & Implants, Texas PLLC; and DDS Dentures and Implants. Staats sued Appellees for damages allegedly resulting from Appellees' negligence in his dental care and treatment. Staats served expert witness reports from Dr. David J. Witt, M.D. (an infectious disease expert) and Dr. James C. Melville (a dentist and maxillofacial surgeon expert) pursuant to Section 74.351(a) of the Act. Appellees objected to the sufficiency of those reports regarding causation. The trial court overruled that objection but, on interlocutory appeal, this court reversed and remanded for the trial court to address Staats' request for an opportunity to supplement his reports regarding causation. *See Singley v. Staats* (*Singley*), No. 02-23-00094-CV, 2023 WL 5615877, at *5 (Tex. App.—Fort Worth Aug. 31, 2023, no pet.) (mem. op.).

After remand, Staats was granted leave to supplement his expert reports on causation, and he served supplemental reports from Drs. Witt and Melville. Appellees again objected to the sufficiency of the reports on causation and requested the trial court to dismiss the case with prejudice.[1] The trial court sustained Appellees'

---

[1]There are no issues regarding either expert's qualifications to render their opinions stated in their reports or the sufficiency of their standard of care opinions.

objection and dismissed the case with prejudice. Staats brings this appeal complaining of those rulings. We will reverse the trial court's ruling that the reports fail to comply with the Act's requirements and reverse its judgment of dismissal with prejudice and remand the case for further proceedings.

## I.  Background

Because the history of this matter prior to the current appeal is set forth in *Singley*, we will not address it here. After remand, the trial court granted Staats permission to file supplemental reports on causation, which he did. The pertinent portions of these supplemental reports are discussed in our analysis below. Appellees then objected to the supplemental reports as being inadequate on causation. The trial court sustained the objections and dismissed Staats' case. Staats brings this appeal from the dismissal.

## II.  Standards of Review and Legal Principles

A trial court's ruling on the adequacy of an expert report is reviewed for an abuse of discretion. *Van Ness v. ETMC First Physicians*, 461 S.W.3d 140, 142 (Tex. 2015); *Jelinek v. Casas*, 328 S.W.3d 526, 539 (Tex. 2010); *Singley*, 2023 WL 5615877, at *3. In analyzing sufficiency under this standard, we consider only the information contained within the four corners of the report. *Abshire v. Christus Health Se. Tex.*, 563 S.W.3d 219, 223 (Tex. 2018). However, one expert need not address the standard of care, breach, and causation; multiple expert reports may be read together to determine whether these requirements have been met. *Id.* As noted above, both of

3

Staats' experts filed original and supplemental reports, and we may consider both the original and supplemental reports of each doctor, and their reports collectively, in determining whether the reports have met Staats' obligation for providing sufficient expert disclosure regarding causation. *Miller v. JSC Lake Highlands Operations, LP*, 536 S.W.3d 510, 513 (Tex. 2017); *Packard v. Guerra*, 252 S.W.3d 511, 527, 535 (Tex. App.—Houston [14th Dist.] 2008, pet. denied).

In recent opinions, the Supreme Court has now set a clear course for reviewing causation challenges to expert witness reports under the Act, which provides that

> [a] report is sufficient if it "provides a fair summary of the expert's opinions as of the date of the report regarding applicable standards of care, the manner in which the care rendered by the physician or health care provider failed to meet the standards, *and the causal relationship between that failure and the injury, harm, or damages claimed*." [Tex. Civ. Prac. & Rem. Code Ann.] § 74.351(r)(6) (emphasis added). A court may dismiss the suit if the report is untimely or deficient. *Id.* § 74.351(b). However, a court shall grant a motion challenging the report's adequacy "only if it appears to the court, after hearing, that the report does not represent an objective good faith effort" to provide the required "fair summary" of the applicable standard of care, the defendant's breach, *and how that breach caused the ultimate injury. Id.* § 74.351(l). (emphasis added).

*Bush v. Columbia Med. Ctr. of Arlington Subsidiary, L.P.*, 714 S.W.3d 536, 543 (Tex. 2025); s*ee also Abshire*, 563 S.W.3d at 224–25.

The *Bush* court made clear that the "good faith effort" is to be viewed as a "low threshold" to "weed out frivolous malpractice claims," not to adjudicate potentially meritorious claims. *Bush*, 714 S.W.3d at 543; *Abshire*, 563 S.W.3d at 223. In *Bush*, the court stressed that a report "adequately addresses causation when the expert explains

'how and why' breach of the standard caused the injury in question by 'explain[ing] the basis of his statements and link[ing] conclusions to specific facts.'" 714 S.W.3d at 544 (quoting *E.D. v. Tex. Health Care, P.L.L.C.*, 644 S.W.3d 660, 664 (Tex. 2022) (alterations in original) (quoting *Abshire*, 563 S.W.3d at 224)). In this regard, the court's role with respect to causation

> *is to determine whether the expert has explained how the negligent conduct caused the injury, not whether the expert has proved causation. Abshire*, 563 S.W.3d at 226 . . . The fair summary threshold is not an evidentiary standard, *and at this early stage of the litigation, we do not require a claimant to present evidence in the report as if it were actually litigating the merits.* Instead, the ultimate evidentiary value of the opinions proffered—that is, whether there actually is a causal connection—is a matter to be determined at summary judgment and beyond. For this reason, an "adequate" expert report "does not have to meet the same requirements as the evidence offered in a summary-judgment proceeding or at trial." *Miller . . .* , 536 S.W.3d [at] 517.

*Id.* (citation modified and emphases altered).

In short, to satisfy the causation requirement, "the expert need not prove the entire case or account for every known fact; the report is sufficient if it makes 'a good-faith effort to explain, factually, *how proximate cause is going to be proven.*'" *Abshire*, 563 S.W.3d at 224 (emphasis added) (quoting *Columbia Valley Healthcare Sys., L.P. v. Zamarripa*, 526 S.W.3d 453, 460 (Tex. 2017)). It is sufficient for the report to draw a direct line from the negligent conduct to a delay in diagnosis and proper treatment, to the ultimate injury. *Id.* at 225.

### III. Analysis

Staats' sole issue, paraphrased, is that the trial court abused its discretion by sustaining Appellees' objections to the sufficiency of his two experts' supplemental reports and by dismissing his lawsuit. Based on the Supreme Court's recent decisions, especially the analysis in *Bush*, we agree.

*Bush* involved a patient who died from a pulmonary embolism after being discharged from the hospital. 714 S.W.3d at 540. The embolism went undiagnosed by her physicians at the hospital prior to her discharge. *Id.* Regarding the cause-in-fact prong of proximate cause of the hospital's alleged negligence, the plaintiff's expert against the hospital stated in his amended report that

> as a result of the Hospital's failure to implement the described policies, such as a Triple Rule Out protocol, "a proper workup was never completed[,] which resulted in a lack of appropriate communication between interdisciplinary providers." Had such a workup been completed, and "had it been recognized that [Williams-Bush] was experiencing a bilateral pulmonary embolism, she would have been evaluated by a cardiac or vascular surgeon and would have *immediately* been anticoagulated, possibl[y] thrombolized and admitted for observation." [Emphasis added.] The report opines that, as a direct result of these failures, Williams-Bush suffered from a "pulmonary embolism that remained undetected and untreated, directly leading to her sudden and untimely death."

*Id.* at 545.

Regarding the foreseeability prong of proximate cause, the plaintiff's expert's report against the hospital stated that the decedent presented with classic symptoms of pulmonary embolism, a life-threatening condition. *Id.* at 545–46. *The policies that the*

*hospital should have implemented were designed to detect such a condition and, if detected, could* have resulted in life-saving treatment for the decedent. *Id.* at 546. According to the court,

> [i]n sum, [the plaintiff's expert] opines that the Hospital's failure to adopt certain policies, such as a standing order to run the Triple Rule Out protocol for patients presenting with certain symptoms, caused a misdiagnosis, which caused Williams-Bush to die from a pulmonary embolism. Because the report adequately explains the links in the causal chain, *Abshire*, 563 S.W.3d at 225–26, we hold the amended report is adequate as to causation.

*Id.*

We believe that the analysis in *Bush* dictates that the reports of Staats' experts in this case were sufficient to "explain causation" under the *Bush* "lenient" "low threshold" standard. In Dr. Melville's first report, he concluded that Dr. Singley fell below the accepted standard of care by not providing "[a]ppropriate patient[] follow-ups and examination after surgical care," including the fact that there was no follow-up between June 16, 2020, and June 29, 2020, when Staats presented to Singley's office with a low-grade fever and coughing. In our prior opinion, we acknowledged that post-operative negligence in failure to diagnose and treat the abscess before June 29 was raised but not explained factually. *Singley*, 2023 WL 5615877, at \*4. But we focused on the allegations of Dr. Singley's failure to treat when requested by Staats on June 29–30. *Id.* at \*4–5. We reversed and remanded the case to the trial court to consider whether to grant Staats an extension to cure the reports' deficiencies. *Id.* at \*5.

After the trial court granted Staats the opportunity to cure, he filed his supplemental reports from the same doctors. Dr. Melville's supplemental report stated that the standard of care for conducting a post-procedure follow-up examination would have been within one week of the procedure (June 16, 2020) unless the patient experienced complications earlier. According to Dr. Melville's supplemental report, if a proper post-operative exam had been done, "we" would know if Staats was experiencing early signs of infection. A proper post-operative examination would have included the patient's subjective complaints and the dentist's objective clinical examination findings.

In this case, Staats reported to his other care providers that he had experienced fevers beginning on June 16. According to Dr. Witt's first report, Staats reported to care providers at Texas Health in Fort Worth that he developed two weeks of hectic fevers on June 16, the day after surgery. On July 1, Staats reported to Dr. Thomas Hubner at Texas Health in Azle that he had experienced a fever of 102 degrees since June 16. According to Dr. Witt on June 23, Staats reported to his primary care doctor that he had a fever. These episodes were within one week after the dental procedure.

Dr. Witt stated in his first report that liver abscesses occurring secondary to dental procedures are a well-recognized risk of the surgery, thus addressing the reasonable foreseeability prong of proximate cause. According to Dr. Melville, early signs of infection could be treated with antibiotics and would have prevented the development of a liver abscess. The failure to conduct a post-operative follow-up

8

within seven days resulted, in reasonable medical probability, in Staats' infection developing into a liver abscess.

Do the reports of Drs. Witt and Melville make a "good-faith effort to explain, factually, how proximate cause *is going to be proven?*" *Bush*, 714 S.W.3d at 544 (emphasis added). Yes, under the "lenient" "low threshold" established in *Bush.* There, the patient presented to the hospital with symptoms consistent with a bilateral pulmonary embolism. *Id.* at 540. The hospital's alleged negligence was the failure to have testing protocols for patients with those symptoms. The explanation for cause-in-fact was that if the protocols had been in place, and if the tests were done according to the protocols, the results would have shown a pulmonary embolus, which would have been treated, avoiding the patient's death. *Id.* at 545–46, 549.

A similar good-faith "explanation" of how proximate cause *is going to be proved* exists here. On June 16, 2020, Staats had dental surgery by Dr. Singley. A foreseeable risk of dental surgery is infection that can lead to liver abscess if not timely detected and treated. The standard of care established by the reports was to perform a post-operative examination within seven days of the surgery or sooner if symptoms presented. Symptoms (fever) reportedly began on June 16 and were hectic for the next two weeks, but no post-operative examination was scheduled by Dr. Singley before June 23, or otherwise. If a post-operative examination had been performed, the fever would have been reported, and the infection would have been treated with antibiotics, which would have prevented the liver abscess. Therefore, the reports

9

created a direct line from the breach of the standard of care, to the failure to diagnose the infection and failure to treat it, and to the ultimate harm, the liver abscess. Under *Abshire* and *Bush*, the reports were adequate. Because the reports support at least one theory, even though not the one this court focused on in the first appeal (no explanation of how or why the outcome would have been different if Dr. Singley had examined Staats on June 29, *Singley*, 2023 WL 5615877, at *5), the claim is not frivolous, and the suit may proceed. *Certified EMS, Inc. v. Potts*, 392 S.W.3d 625, 631 (Tex. 2013); *Lewis v. Funderburk*, 253 S.W.3d 204, 208 (Tex. 2008) (holding that a claimant may serve a report by a new expert to cure any deficiency and is not limited to a report by the original expert); *see also Envision Radiology Tex. LP v. Trader*, No. 05-20-00529-CV, 2022 WL 2826896, at *3 (Tex. App.—Dallas July 20, 2022, no pet.) (mem. op.); *Keepers v. Smith*, No. 01-20-00463-CV, 2022 WL 2347744, at *16 (Tex. App.—Houston [1st Dist.] June 30, 2022, pet. denied) (mem. op.) (holding that an expert report needs not marshal all the plaintiff's proof necessary to establish causation at trial, and it need not anticipate or rebut all possible defensive theories that may ultimately be presented to the trial court). We sustain Staats' sole issue.

## IV.  Conclusion

Having sustained Staats' sole issue, we reverse the judgment of the trial court sustaining Appellees' objections to the supplemental expert reports and dismissing Staats' case. We remand the case to the trial court for further proceedings.

/s/ Mike Wallach
Mike Wallach
Justice

Delivered: November 26, 2025